MASSACHUSETTS ASSOCIATION OF
OLDER AMERICANS, et al.,
Plaintiffs, Appellants,

v.

Alexander SHARP, II, etc.,
Defendant, Appellee.

No. 82–1592.

United States Court of Appeals,
First Circuit.

Argued Jan. 7, 1983.

Decided Feb. 15, 1983.

Suzanne Harris, Cambridge, Mass., with whom Steven A. Hitov, New Rochelle, N.Y., was on brief, for plaintiffs, appellants.

Thomas Noonan, Deputy Gen. Counsel, Hyde Park, Mass., Dept. of Public Welfare, with whom Francis X. Bellotti, Atty. Gen., and E. Michael Sloman, Asst. Atty. Gen., Boston, Mass., Government Bureau, were on brief, for defendant, appellee.

Before COFFIN, Chief Judge, BOWNES and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

Plaintiffs-appellants are a subclass consisting of approximately 4,400 families with stepchildren whose Medicaid and Aid to Families with Dependent Children (AFDC) has been terminated as a result of the stepparent liability provision recently added to the AFDC program. 42 U.S.C. § 602(a)(31) (as amended). Defendant-appellee is the Commissioner of the Department of Public Welfare of the Commonwealth of Massachusetts. Plaintiffs appeal from the district court's denial of their motion for a preliminary injunction to prevent the termination of Medicaid. See 28 U.S.C. § 1292. We reverse.

■ The Medicaid program was established in 1965 as Title XIX of the Social Security Act to provide federal financial assistance to states choosing to reimburse needy persons for certain medical treatment costs. Act of July 30, 1965, Pub.L. No. 89-97, tit. I, § 121(a), 79 Stat. 343; see Schweiker v. Hogan, —— U.S. ——, ——,

102 S.Ct. 2597, 2600, 73 L.Ed.2d 227 (1982). States are not required to participate in the program, but if they do, they must comply with all requirements imposed both by the Act itself and by regulations promulgated by the Secretary of the Department of Health and Human Services. See 42 U.S.C. § 1396; Schweiker v. Gray Panthers, 453 U.S. 34, 37, 101 S.Ct. 2633, 2636, 69 L.Ed.2d 460 (1981). A participating state must submit a plan for medical assistance that conforms to the requirements of 42 U.S.C. § 1396a. Massachusetts has chosen to participate in the Medicaid program. See Mass.Gen.Laws Ann. ch. 118E (West Supp. 1982).

A participating state is required to provide assistance to the "categorically needy" and may provide assistance to the "medically needy." 42 U.S.C. § 1396a(a)(10); 42 C.F.R. §§ 435.100–.340 (1981). The categorically needy are those persons receiving federal aid through other federal cash assistance programs such as AFDC and Supplemental Security Income (SSI). 42 U.S.C. § 1396a(a)(10)(A). Also included in the categorically needy are those individuals who are excluded from AFDC because of an eligibility requirement that does not apply to the Medicaid program. The medically needy are persons who are unable to pay for medical expenses, but whose income is too large to qualify for aid under other federal financial assistance programs. See Schweiker v. Gray Panthers, 453 U.S. at 37, 101 S.Ct. at 2636.

■ The Act mandates that assistance provided to the categorically needy "shall not be less in amount, duration, or scope than the medical assistance made available to [the medically needy] ...." 42 U.S.C. § 1396a(a)(10)(B)(ii). Congress imposed this preference for the categorically needy to ensure that those most in need of assistance would receive it first and in amounts not less than that received by other individuals. Schweiker v. Hogan, —— U.S. at —— & n. 6, 102 S.Ct. at 2601 & n. 6.

Plaintiffs, as recipients of AFDC, were all eligible for and received Medicaid pursu-

ant to the mandatory coverage of the categorically needy. The federal regulations governing Medicaid guarantee automatic enrollment in Medicaid upon qualification for AFDC and prohibit a state from requiring an additional Medicaid application from an individual receiving AFDC. 42 C.F.R. § 435.909(a) (1981). Plaintiffs, thus, have never filed a separate application for Medicaid.

In 1981 Congress, as part of the Omnibus Budget Reconciliation Act, P.L. No. 97–35, 95 Stat. 843, amended the AFDC Act to require that states include income of stepparents in determining a stepchild's eligibility for AFDC. *See* 42 U.S.C. § 602(a)(31) (as amended). Prior to this amendment a stepparent's income was not considered in the AFDC eligibility determination. The Medicaid Act specifically excludes stepparent's income from eligibility determinations. 42 U.S.C. § 1396a(a)(17)(D).

Acting pursuant to this new AFDC provision, defendant in March 1982 began notifying plaintiffs, AFDC families containing stepchildren, that their AFDC benefits were being terminated. These notices also advised the families that their Medicaid benefits were ending. After many families were terminated, plaintiffs brought this action seeking to have their Medicaid benefits restored and to prevent further terminations.

Plaintiffs claim that the terminations were illegal because defendant failed to comply with federal regulations requiring the state welfare agency to redetermine eligibility on other grounds before termination. *See* 42 C.F.R. § 435.916(c) (1981). They admit that they are no longer automatically eligible for Medicaid as AFDC recipients. Nonetheless, they claim that most of them are still covered as categorically needy because stepparent income is an AFDC eligibility requirement specifically excluded from consideration in Medicaid eligibility.

Defendant responds that the regulations requiring a redetermination prior to termination do not apply to plaintiffs because they never independently qualified for Medicaid. Rather, defendant contends, the redetermination provisions cover only Medicaid recipients who applied for Medicaid directly and are not receiving it as a function of their eligibility for some other federal assistance program. Defendant argues that the proper course for plaintiffs is to make a new application for Medicaid.

■ The district court denied plaintiffs' motion for a preliminary injunction. The court's denial was based on its belief that any harm suffered by the plaintiffs could be avoided in the main by application for Medicaid benefits. The court conditioned its denial on defendant's sending notices to all plaintiffs informing them of the reasons for their termination from AFDC and Medicaid and advising them that they could still apply for Medicaid benefits.

In determining whether to grant a preliminary injunction the court must consider four criteria:

"(1) [whether] plaintiff will suffer irreparable injury if the injunction is not granted; (2) [whether] such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) [whether] plaintiff has exhibited a likelihood of success on the merits; and (4) [whether] the public interest will not be adversely affected by the granting of the injunction."

*Auburn News Co., Inc. v. Providence Journal Co.,* 659 F.2d 273, 277 (1st Cir.1981) (quoting *Planned Parenthood League of Massachusetts v. Bellotti,* 641 F.2d 1006, 1009 (1st Cir.1981)), *cert. denied,* 455 U.S. 921, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982). While each of these factors must be considered, "the probability-of-success component has loomed large in cases before this court." *Auburn News Co., Inc. v. Providence Journal Co.,* 659 F.2d at 277.

At the appellate level our review is limited. The decision to grant or deny a preliminary injunction is generally left to the discretion of the district court, and we will reverse only if the district court abused its discretion or if the denial was based on a clear error of law. *See Massachusetts Association for Retarded Citizens, Inc. v.*

*King,* 668 F.2d 602, 607 (1st Cir.1981); *Massachusetts Coalition of Citizens with Disabilities v. Civil Defense Agency,* 649 F.2d 71, 74 (1st Cir.1981); *Planned Parenthood League of Massachusetts v. Bellotti,* 641 F.2d at 1009.

We think that the district court committed a clear error of law by failing to examine all of the criteria relevant to a determination of whether a preliminary injunction should issue. In particular, the district court failed to examine the legal arguments raised by the parties. In so doing, it failed to make the required appraisal of the plaintiffs' likelihood of success on the merits. We think that an examination of the merits so clearly indicates that the plaintiffs will prevail that an injunction should issue on their behalf.

We briefly reiterate the legal claims raised by the parties. Plaintiffs contend that the federal regulations governing the Medicaid program require the defendant to redetermine their eligibility prior to terminating their Medicaid benefits. That is, although they are no longer automatically eligible for Medicaid as recipients of AFDC, the defendant, before terminating their benefits, must reexamine the relevant eligibility criteria and determine whether they qualify for Medicaid under some other eligibility category.

In support of their argument plaintiffs rely primarily on two regulations. Both regulations appear in a single subpart: "Eligibility in the States and the District of Columbia." The first of these, 42 C.F.R. § 435.916 (1981), comes under the heading "Redeterminations of Medicaid Eligibility." Section 435.916 requires that the state agency responsible for administering the Medicaid program must promptly redetermine eligibility when it receives information about changes in a recipient's circumstances that may affect his or her eligibility. 42 C.F.R. § 435.916(c)(1) (1981).

The second regulation is found in the section entitled "Furnishing Medicaid."

This regulation requires the state agency to continue to furnish Medicaid to all eligible individuals until they are found to be ineligible. Plaintiffs argue that, taken together, these regulations require the state agency, once it receives possibly disqualifying information, to continue to furnish benefits until it determines that a recipient is ineligible under any possible method of qualifying for benefits.

■ Defendant disputes this interpretation of the regulations. He argues that section 435.916(c)(1) covers only individuals who have directly applied for Medicaid and claims that the redetermination procedure "only makes sense" if the state agency has a separate Medicaid application on file.[1] His argument boils down to essentially one of administrative convenience.

■ As to section 435.930, defendant agrees that this regulation requires the state agency to continue to furnish Medicaid benefits until a recipient is found to be ineligible. Defendant argues, however, that the agency satisfied this requirement because it only discontinued benefits upon learning of plaintiffs' ineligibility for automatic Medicaid coverage due to their loss of AFDC benefits. Defendant sees no interrelationship between sections 435.916 and 435.930 with respect to these plaintiffs. He argues that the agency was not required to do anything upon learning of plaintiffs' loss of AFDC benefits because this made plaintiffs automatically ineligible for Medicaid and did not trigger a redetermination process. We do not agree.

In *Stenson v. Blum,* 476 F.Supp. 1331 (S.D.N.Y.1979), *aff'd without opinion,* 628 F.2d 1345 (2d Cir.), *cert. denied,* 449 U.S. 885, 101 S.Ct. 239, 66 L.Ed.2d 111 (1980), the District Court for the Southern District of New York was confronted with an issue that is nearly identical to the one presented in this case. In *Stenson* the plaintiffs, a class consisting of recently terminated SSI recipients, sought a preliminary injunction to prevent the state Department of Social

---

1. Defendant's claim that plaintiffs never applied for Medicaid benefits is simply incorrect. Since the federal regulations prohibit a state from requiring a separate application for Medicaid from AFDC recipients, an AFDC application once granted is an application for Medicaid. *See Dixon v. Quern,* 537 F.Supp. 983, 988 (N.D.Ill.1982).

Services from suspending their Medicaid benefits until their eligibility was redetermined and, if they were ineligible, until they were afforded notice and an opportunity for a hearing. *Id.* at 1333. SSI recipients, as is so with the present plaintiffs, are mandatorily covered categorically needy individuals for the purposes of the Medicaid Act. The plaintiffs relied primarily on the same regulations that are dispositive in the present case.

In a comprehensive and well-reasoned opinion, Judge Sweet concluded that these regulations require the state agency, upon receipt of notification of an individual's termination from SSI, to reconsider the recipient's eligibility for Medicaid benefits. Pending this *ex parte* determination the state must continue to furnish such individuals with Medicaid benefits, and if it determines that an individual is ineligible, it must give notice and an opportunity for a hearing before termination. *Id.* at 1339–41. The court explained that these regulations apply to individuals who qualified for Medicaid under any eligibility category. *Id.* at 1339.

We agree with the *Stenson* court's conclusion as appropriate to the case before us. Nothing in the relevant regulations evidences an intent to exclude from coverage individuals who automatically qualified for Medicaid as categorically needy. Indeed, the regulatory and statutory scheme points to the opposite conclusion. The regulatory provisions are included in the subpart which "sets forth requirements for processing applications, determining eligibility, and furnishing Medicaid." 42 C.F.R. § 435.900 (1981). That automatically eligible recipients are covered in this subpart is clear from the inclusion of the regulation prohibiting separate Medicaid applications from AFDC recipients. Moreover, the mere determination that these plaintiffs are "disqualified" from *AFDC* eligibility cannot in and of itself amount to a speedy "redetermination" of their eligibility for *Medicaid* within the meaning of the regulations. To the contrary, the regulations suggest that the applicants are still "categorically needy," since the reason for their disqualification (stepparent income deeming) is ex-

pressly made irrelevant to Medicaid eligibility. *See* 42 U.S.C. § 1396a(a)(17)(D); 42 C.F.R. § 435.113.

Our conclusion is also supported by the Medicaid statute itself. Congress mandated that the assistance provided to the mandatorily covered categorically needy cannot be less in "amount, duration, or scope" than the assistance provided to other needy groups. 42 U.S.C. § 1396a(a)(10)(B)(ii). This provision reflects the congressional preference accorded the categorically needy; they are to receive assistance first and in no less comprehensive a form because they are "persons whom Congress considered especially deserving of public assistance . . . ." *Schweiker v. Gray Panthers,* 453 U.S. at 37, 101 S.Ct. at 2636; *see also Schweiker v. Hogan,* —— U.S. at —— & n. 6, 102 S.Ct. at 2601 & n. 6. Thus congressional intent leads to the conclusion that any procedural protections that ensure continuity in benefits should be accorded to the categorically needy.

We conclude that plaintiffs have made an extremely strong showing of likelihood of success on their claim that defendant terminated their Medicaid benefits without following the requisite regulations. Plaintiffs argue that given this strong showing of likelihood of success on the merits, their burden of showing irreparable injury should be commensurately reduced. *See Massachusetts Coalition of Citizens with Disabilities v. Civil Defense Agency,* 649 F.2d 71, 75 (1st Cir.1981). We need not consider this, however, because plaintiffs have made a sufficient showing of irreparable harm.

■ Plaintiffs presented affidavits of several class members who, since termination, have been financially unable to obtain necessary medical treatment. Termination of benefits that causes individuals to forgo such necessary medical care is clearly irreparable injury. *See Becker v. Toia,* 439 F.Supp. 324, 336 (S.D.N.Y.1977); *Bass v. Richardson,* 338 F.Supp. 478, 489 (S.D.N.Y. 1971). At oral argument counsel for defendant admitted that the plaintiffs would be eligible for Medicaid unless their income drastically increased or the children reached the age of twenty-one. An increase in in-

come for any of these plaintiffs sufficient to render them ineligible for Medicaid would be a minor miracle; reaching the age of twenty-one for most of the children is not actuarially possible within the time limits of this case.[2] Defendant's claimed injury from the loss of public funds to ineligible individuals is, in reality, no injury at all, just a remote possibility of injury. Thus the harm to plaintiffs far outweighs that of defendant and a preliminary injunction must issue.

The order of the district court denying preliminary injunctive relief to the subclass of plaintiffs is vacated. The case is remanded to the district court with instructions to issue forthwith a preliminary injunction reinstating the Medicaid benefits of the subclass of plaintiffs until the defendant complies with the statutory and regulatory provisions requiring redetermination of Medicaid eligibility prior to termination of benefits and affords plaintiffs their requisite fair hearing rights if they are found ineligible.

*So ordered.*

---

**2.** The parties stipulated that since defendant's issuance of notices in compliance with the district court's order, only 82, or 1.86%, of the 4,400 terminated families have had their Medicaid benefits restored.