728 F.2d 1175
 4 Soc.Sec.Rep.Ser. 244, Medicare&Medicaid Gu 34,017
Shirley PHILLIPS, on behalf of herself and her minor
children and others similarly situated, Appellees,
v.
Arthur E. NOOT, in his official capacity as Commissioner of
the Minnesota Department of Public Welfare, and
Ramsey County Community Human Services Board,
v.
Richard S. SCHWEIKER, in his official capacity as Secretary,
United States Department of Health and Human
Services, Appellant.
Shirley PHILLIPS, on behalf of herself and her minor
children and others similarly situated, Appellees,
v.
Arthur E. NOOT, in his official capacity as Commissioner of
the Minnesota Department of Public Welfare, and
Ramsey County Community Human Services
Board, Appellants,
v.
Richard S. SCHWEIKER, in his official capacity as Secretary,
United States Department of Health and Human Services.
Shirley PHILLIPS, on behalf of herself and her minor
children and others similarly situated, Appellants,
v.
Arthur E. NOOT, in his official capacity as Commissioner of
the Minnesota Department of Public Welfare, and
Ramsey County Community Human Services
Board, Appellees,
v.
Richard S. SCHWEIKER, in his official capacity as Secretary,
United States Department of Health and Human
Services, Appellee.
 Nos. 83-1366, 83-1367 and 83-1393.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 12, 1983.
Decided March 12, 1984.
 
 Hubert H. Humphrey, III, Atty. Gen., State of Minn. by Beverly Jones Heydinger, Sp. Asst. Atty. Gen., St. Paul, Minn., for Noot [Levine].
 David R. Smith, Dept. of Health and Human Services, Washington, D.C., for Schweiker [Heckler]; Juan A. del Real, Gen. Counsel, Ann T. Hunsaker, Asst. Gen. Counsel, Robert P. Jaye, Deputy Asst. Gen. Counsel, Dept. of Health and Human Services, of counsel.
 Michael Hagedorn, Southern Minn. Regional Legal Services, Inc., Saint Paul, Minn., for Phillips et al.; Michael Parks, Nat. Health Law Program, Inc., Los Angeles, Cal., of counsel.
 Before ROSS, Circuit Judge, HENLEY, Senior Circuit Judge, and McMILLIAN, Circuit Judge.
 HENLEY, Senior Circuit Judge.
 
 
 1
 This class action presents questions as to when and how Medicaid benefits received by the plaintiffs may be terminated by the defendants. The plaintiffs are all Minnesota residents whose Aid to Families with Dependent Children (AFDC) and Medicaid benefits have been terminated because of the enactment of 42 U.S.C. Sec. 602(a)(8)(B)(ii)(II). The defendants are the Commissioner of the Minnesota Department of Public Welfare, the Ramsey County Commissioner Services Board, and the Secretary of Health and Human Services.[1]
 
 BACKGROUND
 
 2
 The case begins with a change in the law under which AFDC benefits are provided. In 1981 Congress amended this law to limit significantly the use of an exclusion (in AFDC parlance, a "disregard") used in figuring a recipient's income for purposes of AFDC eligibility. As a result, the plaintiffs lost their entitlement to AFDC benefits.
 
 
 3
 Recipients of AFDC benefits automatically receive Medicaid benefits. 42 U.S.C. Sec. 1396a(a)(10)(A)(i). These recipients are termed "categorically needy." In some states, including Minnesota, people not eligible for AFDC benefits may still qualify for Medicaid if they are found to be "medically needy," or if they fall into one of several other categories. Plaintiffs here were receiving AFDC benefits and thus were "categorically needy." When their AFDC benefits were terminated, they were no longer considered "categorically needy." However, when AFDC benefits are terminated because of "increased income from employment," recipients are entitled to receive Medicaid for four additional months without a determination that they are "medically needy." 42 U.S.C. Sec. 1396a(e)(1). Recipients may still be eligible for Medicaid benefits if they meet the requirements of other Medicaid provisions.
 
 
 4
 The first issue is whether Sec. 1396a(e)(1)'s four-month grace period applies in this case. The second issue is whether the defendants are required to extend Medicaid coverage to those formerly "categorically needy" while their "medically needy" applications are pending. The district court answered the first question in favor of the plaintiffs and the second question in favor of the defendants. Both plaintiffs and defendants appeal. We affirm.
 
 
 5
 1. The four-month extension of Medicaid.
 
 
 6
 Under 42 U.S.C. Sec. 1396a(e)(1), when AFDC benefits are terminated because of an increase in income, recipients are still covered by Medicaid for four months. The plaintiffs in this case argue that they are entitled to the benefits of this provision.
 
 
 7
 The plaintiffs became ineligible for AFDC benefits not because they began to make more money, but because the way income was calculated for AFDC eligibility was changed. In determining whether a person is eligible for AFDC benefits, certain expenses are excluded, or "disregarded," in figuring the person's income. These include work expenses up to $75.00 a month and child care expenses up to $160.00 a month. Until 1981, there was another "disregard," which allowed recipients to exclude $30.00 plus one-third of their earnings from their income for AFDC eligibility purposes. This disregard is hereinafter referred to as the "30 + 1/3 disregard." This provision was designed to encourage AFDC recipients to work whenever they could, and to remove a substantial disincentive--the termination of AFDC benefits--to working. However, as part of the Omnibus Budget Reconciliation Act (OBRA), Congress in 1981 amended this provision to allow application of the "30 + 1/3 disregard" for only four months. 42 U.S.C. Sec. 602(a)(8)(B)(ii)(II) (1983).
 
 
 8
 Plaintiffs were eligible for AFDC benefits when the "30 + 1/3 disregard" was applied to their incomes. Four months after the law went into effect, the disregard no longer applied to the plaintiffs' incomes. Without the disregard, the plaintiffs were ineligible for AFDC benefits. While there was no increase in "real" income, there was an increase in "countable" income, i.e., income which is determinative of AFDC eligibility. Plaintiffs argue that since their "countable income" has increased, they are entitled to four additional months of Medicaid benefits. Defendants argue just as strenuously that because there has been no increase in actual income, Sec. 1396a(e)(1) does not apply.
 
 
 9
 The statute itself is somewhat ambiguous. "Increased income from employment" would seem to mean an actual increase in earnings. However, immediately following those words in the same provision is a reference to the recipient "becoming ineligible" for benefits. Since eligibility has to do with "countable income," this reference tends to support the plaintiffs' argument.
 
 
 10
 Both plaintiffs and defendants cite several other provisions of the AFDC and Medicaid statutes in an attempt to show that "income" in those statutes means "countable" or "actual" income, as the case may be. We appreciate the effort, but it clears up nothing. Rather, the cited provisions serve only to demonstrate that the word "income" can mean a number of things.
 
 
 11
 The legislative history of Sec. 1396a(e)(1) is more helpful. The clear primary purpose of the provision was to remove a work disincentive: loss of Medicaid benefits. The committee reports discussed then-current law, stating:
 
 
 12
 With the introduction of the earnings disregard provisions under the 1967 amendments, and the consequent gradual loss of cash benefits as earned income increased, families on the assistance rolls can have a substantial total income, and still receive full medicaid protection. The medicaid program has, therefore, a work disincentive effect at some point in the earnings scale--the earning of an extra dollar can mean the phaseout of cash assistance, and the abrupt and complete loss of medicaid.
 
 
 13
 H.Rep. 92-231, reprinted in 1972 U.S.Code Cong. & Ad.News 4989, 5060. The Senate Report reflects a similar awareness of and unhappiness with this disincentive. S.Rep. 92-1230 at p. 46.
 
 
 14
 We are of the opinion that refusing to apply Sec. 1396a(e)(1) in this situation would discourage aid recipients from continuing to work. Of course, the primary concern of Sec. 1396a(e)(1)'s drafters was to remove a disincentive to increased work, because that was the specific problem with which they were faced. However, the overall concern was with encouraging employed aid recipients to continue working. Thus, applying Sec. 1396a(e)(1) here would be consistent with Congress's intention of reducing disincentives to work.
 
 
 15
 Congress often has more than one purpose in mind when it enacts legislation. That appears to be the case here. In addition to removing a work disincentive, Sec. 1396a(e)(1) was designed to prevent sudden loss of medical care. Section 1396a(e)(1)'s legislative history indicates that both the House and Senate were concerned about the potential harm caused by immediate cut-off of Medicaid benefits when families became ineligible for AFDC benefits. The Congress apparently did not want families who became ineligible for AFDC because of increased income to be suddenly and precipitously without medical coverage, especially when that income increase might be marginal. See H.Rep. 92-231, reprinted in 1972 U.S.Code Cong. & Ad.News 4989, 5060; S.Rep. 92-1230 at p. 46.
 
 
 16
 The concern over termination of Medicaid benefits was voiced specifically in terms of marginal earnings increases, but the broader concern was over the fact that such terminations were immediate upon AFDC termination. We read the legislative history as demonstrating a desire to prevent the sudden absence of medical coverage as provided by Medicaid. The plaintiffs had been depending on Medicaid to pay for their medical expenses. Time was needed to arrange for alternative insurance coverage or to apply for Medicaid under some other provision, and to make changes in the family budget to accommodate the new expenses. The four-month buffer would give the now-ineligible recipient time to arrange private insurance if possible, or to apply for Medicaid under some other statutory provision.
 
 
 17
 The defendants stress the legislative history of the 1981 OBRA legislation which, among other things, limited the "30 + 1/3 disregard." Congress's primary purpose in passing this legislation was undoubtedly to cut federal spending. Therefore, the defendants urge us to read Sec. 1396a(e)(1) in the manner which will cost the government less money. This argument is not persuasive. The OBRA Congress did not expressly modify Sec. 1396a(e)(1), and we are unwilling to assume it was modified by implication. The fact that in 1981 Congress sought to cut the budget in no way imposes a general rule that all statutes involving expenditures must be construed in favor of spending less. It is Sec. 1396a(e)(1) and its legislative history which are critical here.
 
 
 18
 Nor do we consider that deference to HHS's position is required here. The mere fact that an agency has taken a position on an issue does not necessarily make that position persuasive. The weight of its judgment depends upon "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." General Electric Co. v. Gilbert, 429 U.S. 125, 142, 97 S.Ct. 401, 411, 50 L.Ed.2d 343 (1976). HHS's position in this litigation is not based on longstanding policy, nor has it been the subject of administrative adjudication or rulemaking. We do not find HHS's position supportive of the congressional purpose of Sec. 1396a(e)(1).
 
 
 19
 As indicated, we recognize that the meaning of "income" may not be crystal clear from the language of the statute, its context, or its legislative history. However, we are impressed with the legislative historical showing that the Congress which enacted Sec. 1396a(e)(1) intended it to prevent precipitous terminations of Medicaid, as well as to encourage recipients of public aid to continue working. Even though that Congress may not have envisioned the precise situation which exists here and now, we find the legislative history to tip the balance in favor of plaintiffs' position. We therefore conclude that the term "income" in Sec. 1396a(e)(1) means "countable" income.
 
 
 20
 2. Continuation of Medicaid pending redetermination of eligibility.
 
 
 21
 The plaintiffs contend that they are entitled to continued benefits under Medicaid until it is determined that they are not eligible for Medicaid benefits under any provision. The district court refused to grant this relief, though it did order the defendants to provide the plaintiffs with clear notice of their right to apply for Medicaid under other provisions. Specifically, the court ordered the state to provide the plaintiffs with actual notice, "in plain and comprehensible English," of the following facts: one, their Medicaid benefits would be terminated in four months; two, if they were in need of medical assistance they must apply immediately for "medically needy" benefits; three, a brief outline of eligibility requirements; four, information concerning who to contact concerning their application; five, the circumstances whereby a hearing may be obtained; and six, the circumstances under which Medicaid benefits may be continued.
 
 
 22
 The plaintiffs point out that there are a number of provisions in the Medicaid statute under which they might be eligible for continued benefits. For example, as discussed supra, a family may still qualify as "medically needy" even if the family is ineligible for AFDC benefits. Depending on income level, there may be a "spend down" requirement, which means that a family only becomes eligible for Medicaid after it has spent a certain amount of its own money on medical expenses.
 
 
 23
 We accept for purposes of this appeal that at least some of the plaintiffs would be eligible for some Medicaid benefits. However, that is not the question. The question is whether the plaintiffs are entitled to full benefits while it is being determined whether they are in fact eligible.
 
 
 24
 The plaintiffs rely on a number of cases, as well as various regulations.
 
 
 25
 In Chu Drua Cha v. Noot, 696 F.2d 594 (8th Cir.1982), this court held that the AFDC program and a similar benefits program for refugees under the Refugee Act of 1980 were so intertwined that when benefits under the Refugee Act were terminated, AFDC benefits must take their place until it is determined, after notice and hearing, that the recipient is not eligible for AFDC benefits. The court noted that the two programs were administered in a closely connected fashion, id., at 604, and held that "there is a substantial probability, because of the legal interconnections between the two programs and because of their joint administration as a practical matter, that recipients could reasonably have had a legitimate expectation that their [refugee] benefits would not be terminated without their being given an opportunity to show that the same payment level should be continued under the AFDC rubric." Id. at 607. The court found that notice and a right to appeal were required under the AFDC and Refugee Act regulations before benefits could be terminated or reduced, id., and did not reach the issue of whether they were required under the Due Process clause.
 
 
 26
 In Stenson v. Blum, 476 F.Supp. 1331 (S.D.N.Y.1979), aff'd without opinion, 628 F.2d 1345 (2d Cir.), cert. denied, 449 U.S. 885, 101 S.Ct. 239, 66 L.Ed.2d 111 (1980), Medicaid benefits were terminated without notice when Supplemental Security Income (SSI) benefits were terminated by HHS. The district court held that the failure to provide pretermination notice and opportunity for a hearing violated Medicaid regulations. 476 F.Supp. at 1337. The fact that HHS provided a hearing on the termination of SSI benefits was held not to satisfy the state's obligation to redetermine Medicaid eligibility. Id. at 1339. The court held that the state was obligated to continue paying Medicaid benefits until a review of its records showed that a particular individual was not otherwise eligible for Medicaid. Id. at 1339-40. As in Chu Drua Cha, the court did not rely on the Constitution, but rather on statutory grounds. Id. at 1333 n. 1.
 
 
 27
 Finally, the plaintiffs rely on Massachusetts Ass'n of Older Americans v. Sharp, 700 F.2d 749 (1st Cir.1983). There, plaintiffs were families with stepchildren whose AFDC benefits had been terminated as a result of a new statute which required inclusion of step-parent income for purposes of determining AFDC eligibility. Step-parent income is excluded, however, for purposes of determining Medicaid eligibility. Nonetheless, the state began notifying the plaintiffs that their AFDC benefits were being terminated and that their Medicaid coverage was ending. The court held that the determination that the plaintiffs were ineligible for AFDC could not in and of itself amount to a redetermination of their separate eligibility for Medicaid. Id. at 753.
 
 
 28
 These cases, while in some ways similar to the case at hand, are in several important ways distinguishable. In none of the three cases was the four-month buffer period established by Sec. 1396a(e)(1) involved. In Stenson, no notice of Medicaid termination at all had been provided, 476 F.Supp. at 1333, nor does it appear that the court required the state to look outside its own files in determining whether the plaintiffs were otherwise eligible for Medicaid. Id. at 1339-40. In Chu Drua Cha, the very statutory definition of refugee benefits required an answer to the question whether the applicants were also eligible for AFDC. 696 F.2d at 605-07. This is hardly the case with Medicaid and AFDC benefits; eligibility for AFDC benefits makes irrelevant the issue of whether a recipient is independently eligible for Medicaid, and eligibility for Medicaid has no consequences related to AFDC eligibility.
 
 
 29
 In any event, none of these cases is determinative of the issues here. As the court noted in Chu Drua Cha,
 
 
 30
 [t]he parties before us naturally differ as to the utility of these cases for present purposes.... None of the cases ... is directly in point, and each of them presents some relevant differences cutting one way or the other.... Our task is not so much to match the facts of this case with the facts of the others, as to analyze closely the legal and administrative situation before us, in order to decide whether the relationship between [the programs] is close enough to require that the notice-and-hearing regulations be applied.
 
 
 31
 696 F.2d at 603.
 
 
 32
 In the circumstances of this case, taking into account the relief ordered by the district court, we believe the requirements of the regulations and the Constitution have been met. It is undisputed that the defendants would require further information from the plaintiffs before eligibility for Medicaid could be determined. The recipients were entitled to clear and specific notice of the right to present this information by applying for Medicaid benefits under other provisions, and to information concerning the availability of assistance. As Chu Drua Cha reaffirmed, adequate notice and opportunity for presenting and pressing of claims of eligibility under other aid programs or provisions are critical. 696 F.2d at 607. The district court found the notice originally given the plaintiffs was insufficient, and the defendants have not appealed this finding. The additional notice ordered by the district court focuses on Medicaid benefits and is, we believe, sufficient to advise the plaintiffs of their rights and responsibilities. It is the individual's obligation to provide this information, once he or she has been fully notified of the requirements.
 
 
 33
 Given the specific notice ordered by the district court, we have every reason to believe the plaintiffs will promptly apply for benefits. The defendants are obliged to promptly redetermine eligibility, 42 C.F.R. Sec. 435.916(c)(1), and the plaintiffs will have the benefit of the four-month buffer period provided by the district court's interpretation of Sec. 1396a(e)(1), which we have affirmed supra. It also appears from the record that many of the plaintiffs will be eligible for Medicaid, and the possibility certainly exists that few, if any, eligible families will have to go completely without benefits.
 
 
 34
 The judgment of the district court is affirmed.
 
 
 
 [1]
 Since the initiation of this litigation, Leonard Levine has replaced Arthur Noot and Margaret Heckler has replaced Richard Schweiker in their respective official capacities