JANE MORALES vs. COMMISSIONER OF PUBLIC WELFARE.

Worcester. February 13, 1984, May 4, 1984 — June 11, 1984.[1]

Present: BROWN, CUTTER, & PERRETTA, JJ.

*Massachusetts Medical Assistance Program. Regulation. Administrative Law,* Regulations, Agency's interpretation of regulation.

A mother whose public assistance payments under the program of Aid to Families with Dependent Children (AFDC) had been terminated when her earnings exceeded the maximum amount permissible for recipients of such assistance was entitled, under regulations of the Department of Public Welfare as interpreted by this court, to have a deduction from her income, known as the "earned income disregard," applied in determining her eligibility for Medicaid during the first four months following termination of her AFDC payments. [242-245]

CIVIL ACTION commenced in the Superior Court Department on August 2, 1982.

The case was heard by *Gerald F. O'Neill, Jr.,* J.

*Diane F. Paulson* for the plaintiff.

*Carolyn V. Wood,* Assistant Attorney General, for the defendant.

CUTTER, J. Mrs. Morales challenges the department's method of calculating eligibility for Medicaid to the "medically needy," i.e., those persons who would be eligible for Aid to Families with Dependent Children (AFDC) if their incomes and resources did not exceed AFDC limits, but whose incomes and assets, in certain circumstances, permit some Medicaid assistance. See *Tinkham* v. *Department of Pub. Welfare,* 11 Mass. App. Ct. 505, 506-516 (1981); *Drysdale* v. *Spirito,*

---

[1] This case was originally argued on February 13, 1984. The panel requested further briefs from counsel in an effort to clarify the applicable Federal and Massachusetts statutes and regulations. The final brief was filed on May 4, 1984.

689 F.2d 252, 253-255 (1st Cir. 1982).[2] As Justice Stevens noted in *Schweiker* v. *Hogan,* 457 U.S. 569, 571 (1982), "The statutory provisions governing the Medicaid program are complex." The remark could be applied also to the relevant Federal and State regulations.[3]

Jane Morales (the mother) received AFDC benefits until May 9, 1982, when those benefits terminated, because the department determined that her monthly gross earnings of $793.06 by then "exceeded the standard of assistance for . . . [her] family," consisting of herself and four children. See 42 C.F.R. 435, subparts E to I (1982). The mother's application to the department for continued Medicaid assistance was rejected on May 18, 1982, and by a corrected letter on June 9, 1982, she was notified that, "if in the six month period beginning with the date of . . . [her] medical service . . . [she should] incur medical expenses of $416.18 . . . [she would] then be eligible to have medical bills which exceed this amount paid" under the department's medical care plan. This determination meant that, before the mother would be eligible to re-

---

[2] See also *ABCD, Inc.* v. *Commissioner of Public Welfare,* 378 Mass. 327, 331-332 (1979); *Moe* v. *Secretary of Admin. & Fin.,* 382 Mass. 629, 633 (1981); Butler, The Medicaid Program, 8 Clearinghouse Rev. 7 (1974); CCH Medicaid & Medicare Guide pars. 14,211, at 6101, 14, 231, at 6114, 14,251, at 6124, 14,311, esp. at 6201.19 et seq. (1984)

[3] We rely upon the *Hogan* case (at 571-583), the *Tinkham* case (at 510-516), and the *Drysdale* case (at 253-255) for explanation of the general background of the present controversy which relates in part to a deduction from income which, in the *Drysdale* case (at 253-254), is referred to as the "[e]arned [i]ncome disregard" (EID), and in part to the date as of which eligibility for Medicaid benefits, taking into account the effect of a deduction comparable to the EID, is to be computed. In the present case, see 106 Code Mass. Regs. (C.M.R.) § 506.120(A)(3) (1981), that deduction more appropriately should be called "the $30 plus ⅓ disregard."

ceive Medicaid assistance, she would have to incur, or "spend down," $416.18 from her own assets for medical bills.[4]

The mother appealed and a hearing took place before an appeals referee of the department. See G. L. c. 18, § 16. The referee determined that the June 9 letter correctly stated the result provided for in the department's regulations. The mother sought judicial review of this ruling under G. L. c. 30A, § 14, asserting that the department had misapplied certain of its own regulations, some of which are set out in the appendix to this opinion.

The mother contends that, under the applicable regulations, she was entitled to medical assistance through August, 1982, a period during which, taking into account the $30 plus ⅓ disregard (see notes 3 and 4, *supra*), she would have no surplus income. The department, in effect, contends that its regulations, viewed as a whole, set out a reasonable and not unduly abrupt method of cutting down Medicaid assistance for persons who (e.g., by obtaining employment) have ceased to be eligible for AFDC. See the discussion in the *Drysdale* case, 689 F.2d at 255-256, of the EID (see note 3, *supra*) as an incentive to those receiving public assistance to earn income and thereby remove themselves from AFDC.

---

[4] The basic facts of the mother's predicted gross monthly income and deductions, for the period May through October, 1982, follow:

|  | May to August, 1982 | Sept. and Oct., 1982 |
|---|---|---|
| Gross Monthly Income | $793.09 | $793.09 |
| Work-related expenses | -75.00 | -75.00 |
|  | $718.09 |  |
| $30 plus ⅓ disregard, | -30.00 |  |
| see 106 C.M.R. | $688.09 |  |
| § 506.120(A)(3) | -229.36 |  |
| Net Monthly Income | $458.73 | $718.09 |
| MA standard for |  |  |
| family of five | 510.00 | -510.00 |
| (See 106 C.M.R. § 506.410) |  |  |
|  |  | 208.09 x2 |
| Excess Income | 0 | 416.18 |

The department, as a matter of policy, could have recognized that the incentive to a person in the position of the mother to work to avoid being an AFDC recipient probably would be greater if its regulations should allow a former AFDC recipient to remain on Medicaid until she in fact (under the department's regulations) receives excess income (after taking into account for four months the $30 plus ⅓ disregard). See the final sentence quoted in the appendix from 106 Code Mass. Regs. (C.M.R.) § 506.120(A) (3) (1981). On that basis the mother would not have been subject to any "spend down" of her own funds for medical aid until after August, 1982. The termination of Medicaid on that basis might have turned out to be less burdensome. Instead (compare 42 U.S.C. § 602[a][8][A][iv] [Supp. V. 1981]), the department adopted regulations which it interprets as requiring an estimate of the mother's prospective earnings and work-related expenses (and any permissible $30 and ⅓ disregard) to be made for a future six-month period from the date of her first request for medical assistance after her AFDC has ceased. The mother's contention would have *postponed* any further computations until September, 1982. Then, of course (if the mother's income and circumstances remained unchanged) for the then succeeding six months she would be required by the regulations (as interpreted by the department) to expend for medical costs all or substantially all of her then current excess income before being eligible for Medicaid.

The regulations could have been expressed much more clearly and in a manner more intelligible, not only to recipients of aid but even to social workers and judges trying to understand the Medicaid structure. The trial judge[5] felt constrained, however, to accept in this review under G. L. c. 30A, § 14, the de-

---

[5] The trial judge stated that, "in a de novo hearing," under 106 C.M.R. § 506.500 (1981), he would have treated the mother as entitled to Medicaid "for the first four months after" the termination of her AFDC benefits, because the purpose of 106 C.M.R. § 120(A) (3) "is to allow families time to get back on their feet after leaving public assistance. A common sense application of the two sections [of the regulations] . . . would seem to compel a conclusion that the . . . [mother] should retain M[edicaid] A[ssistance] for four months."

partment's interpretation (which he regarded as permissible) of its own regulations.[6] We must consider whether the Massachusetts regulations are clear enough to permit that interpretation.

We asked the parties to file further briefs (see note 1, *supra*), because we recognized that the department was confronted with the intricate problem of adjusting its procedures and regulations to a complex, frequently changed, Federal statutory and administrative structure for Medicaid and AFDC. See *Blum* v. *Bacon,* 457 U.S. 132, 141-142 (1982).[7] Because of this Federal-State problem, we were reluctant to reject the department's somewhat obscure interpretation of its own regulations without being satisfied that a different interpretation would not complicate further an already difficult intergovernmental situation.

The new brief in behalf of the department essentially concedes that the mother's contentions as to the "correct interpretation of [the department's] current regulations," if adopted by us, (1) "probably would not conflict with any [F]ederal statute or regulations," and (2) that Federal financial participation in Medicaid payments is available for payments made by a State pursuant to a court order. 42 C.F.R. 431.250(b) (2) and (d)

---

[6] The department has embodied some parts of its interpretation in its Massachusetts Medical Assistance Procedures Handbook par. 6126 (1982). In considering the regulations, the next to the last paragraph of G. L. c. 118E, § 10, inserted by St. 1969, c. 800, § 1, may be pertinent. This paragraph reads in part. "In any case where the monthly income of a recipient . . . is in excess of the exemptions allowed, the recipient . . . shall be liable to pay to the provider of medical care . . . an amount . . . equal to the excess income for a period of *six consecutive months,* which includes the period when such service was provided" (emphasis supplied). Compare c. 118E, § 12(*c*).

[7] See also *ABCD, Inc.* v. *Commissioner of Public Welfare,* 378 Mass. at 331-334; *Schweiker* v. *Hogan,* 457 U.S. at 572-580; *Massachusetts Assn. of Older Americans* v. *Sharp,* 700 F.2d 749 (1st Cir. 1983); *Beltran* v. *Myers,* 701 F.2d 91, 94 (9th Cir.), cert. denied sub. nom. *Rank* v. *Beltran,* 462 U.S. 1134 (1983). Relevant statutes and regulations include the following provisions. 42 U.S.C. § 602, as amended through Pub.L.No. 98-21, 97 Stat. 140 (1983), and § 1396a(a) and (b), now as amended through Pub.L.No. 98-21, 97 Stat. 169, 170 (1983). 42 C.F.R. §§ 435.301(a) (ii) & 435.726 (1982).

(1983). Deference is ordinarily afforded to a department's interpretation of its own regulations. See *Purity Supreme, Inc.* v. *Attorney Gen.,* 380 Mass. 762, 782 (1980). The regulations set out in the appendix, however, especially §§ 505.300, 506.000, 506.510, 506.520, when read with § 506.120(A) (3), as the trial judge pointed out, do not clearly justify the department's interpretation. Instead, they indicate that an aid recipient, for four months after he or she has ceased to receive AFDC, remains eligible for the "$30 and one-third 'disregard'" and because of that disregard, such an aid recipient is likely to have no excess income for four months after receipt of the last AFDC payment. Section 506.510 (even when considered with the next to the last paragraph of G. L. c. 118E, § 10; see note 6, *supra*) does not seem to us to require (although it may permit) the use of a six-month prospective budget period, at least until the four-month period has expired. The department in 106 C.M.R. § 502.220 (1981) has recognized that determinations of eligibility may be made more frequently than at six-month intervals where the department knows of changes in an aid recipient's fiscal situation.

If the department had made its regulations (and illustrations of their proposed application in particular circumstances) as informative as the provisions of Massachusetts Medical Assistance Procedures Handbook par. 6126 (1982), see note 6, *supra,* it may be that its interpretation of its regulations would have been sustained as permissible. That handbook, however, has not been subjected to the statutory procedures for adopting regulations (see G. L. c. 30A, §§ 5-9), nor can we assume that the handbook is generally available to the public. We conclude, on this record, that the common-sense interpretation of the regulatory language is that for which the mother contends. The department's interpretation of its regulations seems inconsistent with their terms. See *Finkelstein* v. *Board of Registration in Optometry,* 370 Mass. 476, 478 (1976). See also *Tinkham* v. *Department of Pub. Welfare,* 11 Mass. App. Ct. at 514-516. Compare *Mullaney* v. *Commissioner of Public Welfare,* 9 Mass. App. Ct. 613, 616-617 (1980), where a departmental interpretation was ruled to be "consistent with the

[underlying] text's more obvious reading." We hold that the regulations permitted the mother to receive Medicaid until the expiration of four months from the last payment to her of AFDC.[8]

The judgment is reversed. The case is remanded to the Superior Court which is to reverse the decision of the department and to order the department to grant Medicaid benefits to the mother for the four months following the last May, 1982, AFDC payment to her.

*So ordered.*

APPENDIX.

### CERTAIN RELEVANT REGULATIONS OF THE DEPARTMENT OF PUBLIC WELFARE

A. Directly applicable department regulations are set out in 106 Code of Massachusetts Regulations (C.M.R.) in the following sections (emphasis supplied).

§ *506.000 [1981]: "Overview of Calculation of Financial Eligibility*: Financial eligibility is determined by comparing the net countable income and assets available to persons in the assistance unit with the asset limitation and income standards established by the Department."

§ *506.500 [1981]: "Spend-Down Eligibility: Community Cases.* Sections 506.500-506.580 apply to otherwise eligible community cases [of which the mother is one] *whose net MA income exceeds* the MA Income Standard for community cases."

§ *506.510 [1983]: "The Spend-Down Period.* The spend-down period is a *six (6) month prospective period* which starts on the first day of the month of service of the earliest bill used to meet the spend-down amount. This date shall not be earlier than *three (3) months* prior to the month of application and *shall not extend more than six months* from the first day of application."

---

[8] The most recently filed briefs of the parties refer to a decision of a Superior Court judge in Rivera *v.* Commissioner of the Dept. of Pub. Welfare, Super. Ct., Hampden County, Civ. No. 83-684 (1984). We do not find it necessary to decide the issues there presented, which later may reach this court on appeal. We assume that, if the department decides to revise and clarify its regulations as a consequence of our decision, it will give consideration also to clarifying its regulations in a manner which deals appropriately with issues raised in the *Rivera* case.

*§ 506.520 [1983]: "Calculating the Spend-Down Liability.* The spend-down liability is the amount of excess income that the applicant or recipient is considered to have available to meet medical expenses *during the spend-down period.* The amount by which the Net MA Income exceeds the MA Income Standards is the excess monthly income. The spend-down liability is determined by multiplying the excess monthly income by six."

B.   The computation of the "spend-down" is affected by *106 C.M.R. § 506.120(A) (1) (1981),* which gives to each member (employed on a full-time basis) of an AFDC-related family unit a "work-related expense deduction" of $75 from gross wages and also a further deduction by *§ 506.120(A) (3) "Eligibility for the '$30 and one-third '[d]isregard'"* which reads (in part): "A family or an individual who has received AFDC cash assistance in any one of the four calendar months that precedes the month of application for Medical Assistance is eligible to have $30 and one-third of remaining gross earned income, after dependent care and work related expense deductions, disregarded. *This disregard continues to be applied only as long as it can be established that in at least one of the preceding four calendar months AFDC cash assistance was received"* (emphasis supplied).

C.   Another relevant regulation in 106 C.M.R. is *§ 505.300 (1981) "The Budget Period.* The budget period is a six (6) month *prospective period* which starts on the first day of the month of application on which the applicant would have been eligible, or on the date of service of the first bill which the recipient wishes to have covered by *MA.* This date must not be earlier than three (3) months prior to the month of application" (emphasis supplied). It is provided, however, in 106 C.M.R.

§ 502.220 (1981), *"Time Standards for Redetermination.* A redetermination shall be completed at least every 6 months. Eligibility shall be redetermined more frequently if the Department obtains information indicating changes which affect eligibility or benefit level."