[No. B001083. Second Dist., Div. Three. May 7, 1985.]

KATHERINE EDWARDS, Plaintiff and Respondent, v.
BEVERLEE MYERS, as Director, etc., et al.,
Defendants and Appellants;
EDDY TANAKA, as Director, etc., Defendant and Respondent.

■

COUNSEL

John K. Van de Kamp, Attorney General, Thomas E. Warriner, Assistant Attorney General, Anne S. Pressman and Richard J. Magasin, Deputy Attorneys General, for Defendants and Appellants.

Byron J. Gross, Bruce Iwasaki, Marilyn Kaplan and Melinda R. Bird for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

OPINION

DANIELSON, J.—Defendants Department of Health Services, Department of Finance, and the Director of each (State), as well as the Director of the Los Angeles County Department of Public Social Services (County), appeal from an order granting a preliminary injunction restraining them from terminating payment of Medi-Cal benefits to certain recipients. In a previous opinion, we held the terminations proper. ■ Pursuant to the direction of our Supreme Court, we have reconsidered the matter in light of *Crippen v. Kheder* (6th Cir. 1974) 741 F.2d 102, and hold, in conformance therewith, that Medi-Cal recipients who are no longer automatically eligible for such benefits are nonetheless entitled to continue receiving them until redetermination of their eligibility under other, nonautomatic, Medi-Cal categories.

Subchapter XIX of the Social Security Act established the Medicaid program to provide federal financial assistance to states choosing to reimburse needy persons for certain medical treatment costs. (42 U.S.C. § 1396 et seq.) States electing to participate in the program must comply with all requirements of the act and with regulations promulgated by the Secretary of the Department of Health and Human Services. (42 U.S.C. § 1396; *Massachusets Ass'n of Older Americans* v. *Sharp* (1st Cir. 1983) 700 F.2d 749, 750.) California has chosen to participate in the program, terming its medical benefits program "Medi-Cal." (Welf. & Inst. Code, § 14000 et seq.)

Participating states are required to provide assistance to the "categorically needy" and may elect to provide assistance to the "medically needy." (42 U.S.C. § 1396a(a)(10); 42 C.F.R. §§ 435.100-435.340.) The "categorically needy" are those individuals or families receiving federal aid through other programs, i.e., aid to families with dependent children (AFDC) or supplemental security income (SSI) (42 U.S.C. § 1396a(a)(10)(A); 42

C.F.R. §§ 435.110, 435.120.) Also included within this class are individuals excluded from AFDC because of an eligibility requirement that does not apply to the Medicaid program. (42 C.F.R. § 435.122.) The "medically needy" are persons not receiving AFDC or SSI, but who meet certain eligibility guidelines for medical assistance. (42 C.F.R. § 435.301.) California has opted to provide coverage for "medically needy" persons under its Medi-Cal program.

Plaintiff Katherine Edwards is one of a number of California residents who, because they were recipients of aid to families with dependent children (AFDC), were termed "categorically needy" for Medi-Cal purposes and thus automatically eligible for such benefits.

Prior to 1981, $30 plus one-third of an AFDC recipient's earnings were excluded from income for the purpose of determining eligibility for benefits under that program. This "30 and ⅓ disregard" was designed to encourage AFDC recipients to work by removing the disincentive of termination of benefits upon employment. In 1981, as part of the Omnibus Budget Reconciliation Act (OBRA), Congress limited application of the "30 and ⅓ disregard" to a period of only four months. (42 U.S.C. § 602(a)(8)(B)(ii)(II).)

In California, OBRA resulted in the elimination of the "30 and ⅓ disregard" on April 1, 1982, to persons who had been receiving AFDC benefits on its effective date. Elimination of the disregard rendered Edwards and others ineligible for AFDC benefits. These persons were also no longer considered "categorically needy," and therefore no longer automatically eligible for Medi-Cal benefits.

In March 1982, Edwards received a notice of action stating that her AFDC and Medi-Cal benefits would be discontinued effective April 1, 1982, due to expiration of her entitlement to the "30 and ⅓ disregard." The notice also advised Edwards of her right to request a state hearing on the matter, and that her benefits might continue pending such a hearing.

Edwards did not seek a state hearing; instead, she filed this action for injunctive relief, contending the state was obligated pursuant to 42 United States Code section 1396a(e)(1) to continue payment of Medi-Cal benefits for a period of four months following termination of AFDC benefits, and that in any event payment of benefits must continue until eligibility therefor is redetermined under the guidelines applying to the "medically needy" recipient category.

Under 42 United States Code section 1396a(e)(1), when AFDC benefits are terminated because of "increased hours of, or increased income from,

employment," recipients are entitled to receive Medicaid benefits for four additional months without a determination that they are "medically needy." (See also 42 C.F.R. § 435.112.) The trial court determined that the term "income," as used in section 1396a(e)(1), referred to "countable income," i.e., net income after deduction of all disregards permitted in calculating AFDC eligibility; therefore, the increase in a recipient's countable income resulting from elimination of the "30 and ⅓ disregard" constituted "increased income from employment." The court issued a preliminary injunction restraining the State from failing to continue payment of Medi-Cal benefits for an additional four months to recipients discontinued from the AFDC program due to the elimination of the "30 and ⅓ disregard." The State was also enjoined from failing to continue disbursement of Medi-Cal benefits to such recipients pending redetermination of their eligibility under Medi-Cal criteria other than AFDC eligibility.

The State appealed, contending the trial court erred in ordering payment of Medi-Cal benefits for both the four-month period attributed to section 1396a(e)(1), and until redetermination of eligibility. In our original decision, we held in favor of the State on both issues.

Plaintiff now concedes the first of these issues has been rendered moot by the enactment of section 2624 of the Deficit Reduction Act of 1984 (Pub.L. No. 98-369), providing that families who lose AFDC eligibility upon expiration of their four-month entitlement to the "30 and ⅓ disregard" remain eligible for Medicaid benefits for a period of nine additional months. (See also Welf. & Inst. Code, § 14005.8.)

With respect to the second issue, our Supreme Court has directed our attention to the decision in *Crippen* v. *Kheder, supra,* 741 F.2d 102. Crippen's eligibility for SSI benefits terminated when the Michigan Department of Social Services revoked the Adult Foster Care license for the home in which she resided. The department notified Crippen that her Medicaid benefits would be terminated because her SSI benefits had been terminated, and that she could seek a hearing, whereupon her benefits would continue until the hearing was held. She did not request a hearing, but filed a class action "seeking declaratory and injunctive relief against the Department's policy of automatically terminating individuals from Medicaid solely upon receipt of information that SSI benefits have been terminated without making a prior determination of the individual's eligibility as a medically needy person." (*Crippen* v. *Kheder, supra,* 741 F.2d at p. 104.)

Crippen pointed out, as does Edwards, that the regulations require the state to "promptly redetermine eligibility" when a recipient's circumstances have changed (42 C.F.R. § 435.916(c)), and to continue to furnish Medi-

caid "to all eligible individuals until they are found to be ineligible" (42 C.F.R. § 435.930(b)).[1]

Crippen relied, as does Edwards, on the decisions in *Stenson* v. *Blum* (S.D.N.Y. 1979) 476 F.Supp. 1331 (affd. without opn. (2d Cir.) 628 F.2d 1345, (1980) cert. den. 449 U.S. 885 [66 L.Ed.2d 111, 101 S.Ct. 239], and *Massachusetts Ass'n of Older Americans* v. *Sharp* (1st Cir. 1983) 700 F.2d 749. In *Stenson*, the state terminated payment of Medicaid benefits to recently terminated SSI recipients without notice and without an opportunity for a hearing. These former recipients were granted an injunction requiring the state to restore their Medicaid benefits, and to continue furnishing the same, until the agency made an ex parte determination of eligibility for such benefits on a ground other than categorical eligibility, until the recipients were given timely and adequate notice of the proposed termination of their Medicaid benefits, and until they were accorded an opportunity for a hearing. (*Stenson* v. *Blum, supra,* 476 F.Supp. 1331, 1339-1340, 1343.) In *Massachusetts Ass'n of Older Americans* v. *Sharp, supra,* 700 F.2d 749, the court held that the state was obligated to continue payment of Medicaid benefits to families with stepchildren whose AFDC benefits had been terminated as a result of a recent stepparent liability provision, until the state determined that the recipients were not eligible for medically needy Medicaid. The court noted, at page 753, that "the regulations suggest that the applicants are still 'categorically needy', since the reason for their disqualification (stepparent income deeming) is expressly made irrelevant to Medicaid eligibility. *See* 42 U.S.C. § 1396(a)(17)(D); 42 C.F.R. § 435.113."

The arguments of the Michigan department in *Crippen* also closely parallel those of the State in the present case. The department urged that Crippen was "found to be ineligible" for Medicaid upon the department's receipt of notice that she was no longer receiving SSI benefits, that the requirement that benefits continue until a finding of ineligibility was thus satisfied, and, therefore, that Crippen's Medicaid benefits were properly terminated. (*Crippen* v. *Kheder, supra,* 741 F.2d at p. 106.) Moreover, the department urged that since persons receiving SSI are not required to file a separate application for Medicaid (42 C.F.R. § 435.909), such persons must file written applications for such benefits (42 C.F.R. § 435.907) once their SSI benefits are terminated.

---

[1] Crippen also relied on 42 Code of Federal Regulations section 435.1003(b), which requires the state to "take prompt action" to determine eligibility once it has received notice from the Social Security Administration that SSI benefits have been discontinued. While it appears there is no comparable provision specifically dealing with discontinued AFDC recipients, the import of section 435.916(c) is indistinguishable from that of section 435.1003(b).

The *Crippen* court found several flaws in the department's argument, noting that an application for SSI also serves as an application for Medicaid, and that Crippen, though no longer automatically eligible for Medicaid, was not automatically ineligible for such benefits. The court observed that the most the department had determined was that one of several possible bases for Medicaid eligibility, i.e., the receipt of SSI benefits, had been eliminated. Since no effort was made to determine Crippen's eligibility for Medicaid on any other basis prior to terminating her from the program, the department "could not have found Crippen to be ineligible for medicaid prior to terminating her from the program as it was required to do by 42 C.F.R. § 435.930(b)." (*Crippen* v. *Kheder, supra,* 741 F.2d at p. 106.) (Fn. omitted.) The court held "that the Department's policy of automatically terminating the benefits of medicaid recipients solely because their SSI benefits have been terminated without determining whether they qualify as medically needy individuals violates the regulations promulgated under the Social Security Act. The regulations require instead that, upon receipt of notice that an individual has been terminated from the SSI program, the Department must promptly determine *ex parte* the individual's eligibility for medicaid independent of his eligibility for SSI benefits. While this determination is being made, the state must continue to furnish benefits to such individuals." (*Id.,* at pp. 106-107.) (Fn. omitted.)

Defendants rely on the decision in *Phillips* v. *Noot* (8th Cir. 1984) 728 F.2d 1175. In that case, the court held that the four-month buffer period of section 1396a(e)(1) did apply to discontinued AFDC recipients, but that the State could thereafter terminate payment of Medicaid benefits without determining eligibility under other Medicaid categories. The court distinguished *Stenson* v. *Blum, supra,* 476 F.Supp. 1331, and *Massachusetts Ass'n of Older Americans* v. *Sharp, supra,* 700 F.2d 749, noting that neither involved the buffer period of section 1396a(e)(1), and that in *Stenson,* no notice of Medicaid termination had been given; moreover, the court in *Stenson* apparently did not require the State to look beyond its own files in redetermining eligibility. The *Phillips* court looked to the notice ordered by the lower court, to the State's obligation to promptly redetermine eligibility pursuant to 42 Code of Federal Regulation, section 435.916(c), to the aforementioned buffer period, and to the record showing that many of the plaintiffs would fall within other eligibility categories, and concluded that "the possibility certainly exists that few, if any, eligible families will have to go completely without benefits." (*Phillips* v. *Noot, supra,* 728 F.2d at p. 1180.)

In the present case, AFDC recipients terminated from that program because of expiration of the period within which they may take advantage of the "30 and ⅓ disregard," nonetheless remain eligible for Medi-Cal ben-

efits for an additional period of nine months. However, we find nothing to suggest that the State is obligated to redetermine Medi-Cal eligibility within that period. While it appears likely that such redeterminations could and would be accomplished, given the notice requirements of the preliminary injunction,[2] as well as the regulations heretofore discussed, we believe the *Crippen* approach is the more sound, in that it ensures continuity of benefits to eligible recipients who cannot themselves effect the necessary redeterminations, placing the burden on the State to act quickly to protect its interest in terminating payment of benefits to persons who are no longer eligible to receive them.

Accordingly, we hold that the State is required to continue payment of Medi-Cal benefits to terminated AFDC recipients pending the State's determination of the recipients' eligibility for Medi-Cal benefits under other, noncategorical, Medi-Cal eligibility categories.

## DECISION

The order granting the preliminary injunction is modified (1) by striking therefrom the order made pursuant to section 1396a(e)(1) directing the State to continue payment of Medi-Cal benefits for a period of four months following termination of AFDC benefits, and (2) to provide, in the notice requirements, that recipients be informed that their Medi-Cal benefits will continue for the following nine months, rather than one month. As so modified, the order is affirmed. Each party to bear its own costs.

Klein, P. J., and Lui, J., concurred.

---

[2]The terms of the preliminary injunction require the defendants, when giving the required advance 10-day notice of termination of AFDC benefits (42 C.F.R. § 431.211), in all cases in which eligibility for medically needy Medi-Cal benefits is not immediately determined and the recipients so notified, to inform recipients that their Medi-Cal benefits will continue for the following month and that they will receive a separate notice regarding further continuation of their benefits. Recipients must thereafter be informed of their right to have Medi-Cal continue despite termination of AFDC benefits. They must also be instructed as to the method of application therefor, and provided with application forms.