The OHIO STATE CONSUMER EDUCATION ASSOCIATION, et al., Plaintiffs,

v.

Richard SCHWEIKER, et al., Defendants.

No. C–1–81–933.

United States District Court, S. D. Ohio, W. D.

Jan. 4, 1982.

Barbara Cook, Cincinnati, Ohio, for plaintiffs.

Walter Gerhardstein, Robert Sherman, Asst. Attys. Gen., State of Ohio, Columbus, Ohio, Elizabeth Gere Whitaker, Cincinnati, Ohio, James Harper, Asst. Pros. Atty., Cincinnati, Ohio, for defendants.

## FINDINGS OF FACT OPINION AND CONCLUSIONS OF LAW

CARL B. RUBIN, Chief Judge.

This matter is before the Court on plaintiff's Motion for a Preliminary Injunction. A hearing on that motion was held on December 3, 1981 at which time plaintiffs and defendants presented evidence, arguments and authorities in support of their respective positions. Plaintiffs seek to enjoin the defendants from taking any agency action pursuant to certain recently enacted federal and state welfare regulations. Specifically, these regulations implement reductions in the Aid to Families with Dependent Children program (ADC) mandated by the Omnibus Budget Reconciliation Act of 1981 (OBRA). Because there is no material dispute as to the facts in this matter, the Court, in accordance with Rule 65(a)(2) of the Federal Rules of Civil Procedure deems the hearing on the application for a preliminary injunction a hearing on the merits. Consequently, the determination reached herein may be considered a Final Order in accordance with such rule.

Pursuant to Rule 52 of the Federal Rules of Civil Procedure, the Court hereby submits its Findings of Fact, Opinion and Conclusions of Law.

## I. FINDINGS OF FACT

(1) Congress enacted the Omnibus Budget Reconciliation Act of 1981 (OBRA) Pub.L.No.97–35, 95 Stat. 357 (1981) on August 13, 1981. Sections 2301 through 2321 of the Act made major changes in the joint federal and state welfare program known as Aid to Families with Dependent Children (ADC). 42 U.S.C. § 601–675. The legislative changes were effective October 1, 1981.

(2) In anticipation of Congressional passage of the proposed legislation, the Secretary of Health and Human Services sought informal comment from a number of groups and individuals regarding the legislation during the summer of 1981. In May, 1981, the Secretary decided to avoid the prepublication notice and comment period mandated under the Administrative Procedure Act (APA), 5 U.S.C. 500–576, and to issue instead interim final regulations.

(3) On September 21, 1981, defendant Schweiker published interim final regulations implementing OBRA effective October 1, 1981. 47 Fed.Reg. 46750. The Secretary justified dispensing with the notice of proposed rulemaking required by the APA by invoking the "good cause" exception provided for in 5 U.S.C. § 553(b)(B). In accordance with the procedural requirement of that subsection, the Secretary found that a prepublication comment period was "impracticable" due to the short time span between the Act's passage and effective date, and the states' need for assurance that new federal rules under which the changes were to be implemented would not change in "midstream." Additionally, the Secretary found that a notice and comment period would be contrary to the public interest in that substantial cost savings contemplated by the Act would be lost by any delay in implementation after October first.

(4) On October 1, 1981, the Ohio Department of Public Welfare (Department) sent an interim manual transmittal letter to all county welfare departments in the state which dispense ADC payments. The letter outlined procedures for state implementation of OBRA and included a notice form to be sent to all recipients. On November 1, 1981, notice was sent to recipients of the program explaining the changes in benefits under OBRA and informing them that a review of all cases would be conducted. No reductions or terminations in benefits accompanied this general notice. Notice of actual reductions and terminations in benefits provided to individual recipients included the following instructions for a recipient to obtain a hearing:

> Because this action is a result of a change in federal law, you cannot have a hearing unless you can show that the new law has been incorrectly applied to your individual ADC case.
>
> If you believe that the law has been incorrectly applied to your case, you may

request a hearing ..." (Exhibit A attached to defendants' Creasy and Mobray Memorandum in Opposition to Motion for Preliminary Injunction.)

(5) As of November 25, 1981, the Department had received 113 hearing requests from individuals who had been notified of a termination or reduction in benefits. Sixty-nine of these requests were originally denied. The Department thereafter altered its policy in evaluating requests for hearings and now requires only that a recipient assert that a "mistake" has been made. The Department has also reconsidered the sixty-nine requests for hearings it previously denied and has granted hearings in fifty-eight of these cases.

## II. OPINION

The Motion for Preliminary Injunction essentially presents two issues. First, plaintiffs assert that the Secretary did not have "good cause" for dispensing with the notice and comment period required under 5 U.S.C. § 553(b). Second, plaintiffs allege that the notice provided by the state defendants violated recipients' statutory and constitutional rights to due process. These questions will be dealt with separately.

Section 553 of the Administrative Procedure Act provides for notice of proposed rule making by federal agencies at least thirty days before the regulations' effective date. This notice and comment period, however, is expressly made inapplicable in either of the following circumstances:

(A) To interpretive rules, general statements of policy, or rules of agency organization, procedure or practice; or

(B) When the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedures thereon are impracticable, unnecessary, or contrary to the public interest. 5 U.S.C. § 553(b)(A)(B).

As noted previously, the Secretary invoked the good cause exception contained in sub-

section (B) with respect to the regulations challenged herein. He specifically found that a notice and comment period was impracticable and contrary to the public interest.

In *Republic Steel Corp. v. Costle,* 621 F.2d 797 (6th Cir. 1980), the United States Court of Appeals for the Sixth Circuit considered the propriety of the Environmental Protection Agency's invocation of the good cause exception in conjunction with its designation of sulfur dioxide nonattainment areas. The Court upheld the EPA's actions based in part on the statutory deadline contained in the Clean Air Quality Amendments of 1977 (the EPA was required under the Act to promulgate the list of attainment/nonattainment areas within 180 days of enactment), and the public interest in control of sulfur dioxide emissions. *Id.* at 803–04. The Court quoted with approval the following statement from the Seventh Circuit's decision in *U. S. Steel Corp. v. Environmental Protection Agency,* 605 F.2d 283, 287 (7th Cir. 1979), *cert. denied,* 444 U.S. 1035, 100 S.Ct. 710, 62 L.Ed.2d 672 (1980), which also found good cause for the EPA's actions:

"The legislative history of this impracticability standard reveals that Congress intended this exemption to operate when *the regular course of rule-making procedure would interfere with the agency's ability to perform its functions within the time constraints imposed by Congress.* Early versions of this provision allowed public participation to be dropped where it was impracticable because of unavoidable lack of time or other emergency. (citation omitted). The exception was broadened by the elimination of this qualifying language." (emphasis added).

It is difficult to conceive of a situation where congressionally imposed time constraints have been of greater importance than in the instant case. As of October 1, 1981, the funds allocated by Congress for the ADC program were substantially reduced. To assert that there was sufficient

time between the passage of OBRA and the Act's effective date to comply with the usual notice and comment procedures is to ignore the realities of this somewhat involved process.[1] Plaintiff asserts that the Secretary could have published notice of proposed rulemaking under 5 U.S.C. § 553 prior to the Act's passage, presumably as early as May of 1981. Whether as a practical matter this was possible in the instant case, however, is not the issue. The Secretary was under no legal obligation to promulgate regulations until the legislation was enacted. This court is unwilling to impose on the Secretary the burden of anticipating proposed legislation which may never become a reality or which may change in content substantially by the time it is passed.

◼ The Court is aware that the Honorable Joseph Lord, Chief Judge of the Eastern District of Pennsylvania, recently granted a preliminary injunction against Secretary Schweiker in an action in that court challenging the OBRA federal regulations on this same procedural ground. *Philadelphia Citizens in Action, et al. v. Schweiker*, 527 F.Supp. 182 (E.D.Pa.1981).[2] Judge Lord's scholarly reasoning was, however, based on decisions of the Third Circuit interpreting the good cause exception to the APA rule-making procedure. The Third Circuit construes the good cause exception narrowly, *American Iron and Steel Institute v. Environmental Protection Agency*, 568 F.2d 284, 292 (3d Cir. 1977), and in *Sharon Steel Corp. v. Environmental Protection Agency*, 597 F.2d 377 (3d Cir. 1979), reached a conclusion contrary to the Sixth Circuit in *Republic Steel*. The Third Circuit was unconvinced that the time pressure on

an agency created by a short interval between legislation's passage and its effective date justifies invocation of the good cause exception absent any "express indication" by Congress that the APA was inapplicable. 597 F.2d at 380. It is significant to note that in electing to follow the Seventh Circuit, the Sixth Circuit in *Republic Steel* specifically rejected the reasoning of the *Sharon Steel* case:

> As to *Sharon Steel Corp., supra* and *U. S. Steel, supra*, we find ourselves in disagreement concerning the applicability of the good cause exception. Both the Third and Fifth Circuit opinions appear to us to ignore the sense of urgency which characterized the Congressional debate preceding the passage of the Clean Air Act Amendments of 1977. 621 F.2d at 804.

◼ Once OBRA became law, the Secretary of Health and Human Services faced a choice. He could either proceed as he did and establish interim final regulations for the various states to use as of October 1, 1981, or he could formulate proposed rules under the notice and comment procedure. The latter course of action, however, involved the risk that after October 1, 1981, there would be serious injustices done in distributing admittedly reduced funds. The Secretary made a reasonable and considered determination to proceed under the good cause exception to § 553. The Court declines to hold that this finding was arbitrary or an abuse of discretion under the facts existing at that time.

Plaintiffs also contend that the notice of reduction or termination in benefits provided by the State defendants was constitutionally and statutorily inadequate and that

---

1. The notice and comment procedure typically involves the promulgation of proposed rules, publication in the Federal Register, solicitation of written comment and the holding of public hearings.

2. Plaintiffs assert that Judge Lord's ruling collaterally estops the Secretary from relitigating the question of good cause. In *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the Supreme Court

granted trial courts "broad discretion" in determining when to permit offensive use of collateral estoppel. In this court's view, existence of good cause under the APA is essentially a question of law. Federal agencies have generally not been precluded from relitigating identical legal issues. Accordingly, this court declines to apply the doctrine of collateral estoppel against the Secretary.

**920**

the individual plaintiffs' benefits cannot be reduced or terminated as a result.

■ *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), established a recipient's right to an evidentiary hearing prior to the termination of benefits under the Due Process Clause of the Fifth and Fourteenth Amendments. Timely and adequate notice of this right is a natural corollary. *Goldberg* was limited in its holding, however, to cases where the recipient has raised factual issues. *Id.* at 268 n.15, 90 S.Ct. at 1020 n.15. Where an individual is challenging a proposed termination or reduction based solely on questions of policy or law, the United States Court of Appeals for the Sixth Circuit has held that there is no obligation on the part of the state to provide an evidentiary hearing. *Benton v. Rhodes,* 586 F.2d 1 (6th Cir. 1978) *cert. denied,* 440 U.S. 973, 99 S.Ct. 1539, 59 L.Ed.2d 791 (1979).

A distinction must also be drawn between the right to participate in a continuing program and the right to have a program continued at an unreduced rate. *Goldberg* dealt with the proposed exclusion of the plaintiff from a continuing welfare program without the opportunity for an evidentiary hearing. The program's continuance and the funds available for the program generally were not affected by Mr. Kelly's participation or exclusion. Under those circumstances, the inquiry was his right to a share in those funds. *Goldberg* properly held that under those circumstances, the plaintiff could not be removed from the program without a hearing.

■ The situation is substantially different where changes in the program itself are at issue. It lies within the wisdom of the legislative branch to expand, to contract or to abolish the program and that determination is not subject to judicial review. The Congress of the United States in August of 1981 determined to reduce the program. Recourse is not to a court to correct any asserted mistake of Congress in that regard.

■ As to those recipients whose benefits were reduced or terminated automatically as a result of OBRA changes, then, there is no obligation on the part of the state to provide an evidentiary hearing or notice to that effect except where a recipient asserts incorrect grant computation. 45 C.F.R. § 205.10(a)(5)(V). Where reductions or termination mandated by the new regulations turn on factual issues, however, there is an obligation to provide a recipient with notice of the right to an evidentiary hearing. The notice provided by the state attempted to reflect this dichotomy in the recipient's right to a hearing:

> "Because this action is a result of a change in federal law, you cannot have a hearing unless you can show that the new law has been incorrectly applied to your individual ADC case.
>
> If you believe that the law has been incorrectly applied to your case, you may request a hearing ..." (Exhibit A attached to defendants' Creasy and Mobray memorandum in Opposition to Motion for Preliminary Injunction).

Plaintiffs contend that the first sentence of the instructions quoted above places an impermissable "pleading burden" on the recipient and violates both federal regulations[3] and the due process clause. They argue that the notice provided requires an individual to make a prehearing showing that a mistake has been made and that

---

**3.** The pertinent regulation provides in part:
45 C.F.R. 205.10(A)
(4) In cases of intended action to discontinue, terminate, suspend or reduce assistance
. . .
(i) The state or local agency shall give timely and adequate notice. . .
(B) 'Adequate' means a written notice that includes a statement of what action the agency intends to take, the reasons for the intended agency action, the specific regulations supporting such action, *explanation of the individual's right to request an evidentiary hearing* (if provided) and ... the circumstances under which assistance is continued if a hearing is requested; (emphasis added).

imposition of this burden is contrary to federal law under *Yee-Litt v. Richardson*, 353 F.Supp. 996 (N.D.Cal.) *aff'd without opinion sub nom. Carlson v. Yee-Litt*, 412 U.S. 924, 93 S.Ct. 2753, 37 L.Ed.2d 152 (1973). In *Yee-Litt*, the Court held that California welfare regulations which permitted summary termination of welfare benefits prior to a hearing whenever the chief referee determined that the recipient's appeal involved purely policy rather than factual issues, violated due process.

■■■ The notice provided by the state defendants is somewhat ambiguous. It can be argued that the first sentence of the notice, while a correct statement of the law from a retrospective viewpoint, would inhibit requests for a hearing.[4] The second sentence, however, clearly explains to a recipient how a hearing may be obtained and that a request may be founded on the belief that the law has been incorrectly applied. It is the State's present policy to grant hearings to all recipients who merely assert that a mistake has been made. This Court concludes that the notice adequately informs recipients of their rights and as such is not constitutionally or statutorily defective.

To the question of whether the change in ADC benefits might have been handled differently and possibly better, the answer is yes. To the question of whether or not it was handled in a fashion that requires the intervention of the judiciary, the answer must be no.

## III. CONCLUSIONS OF LAW

(A) This Court has jurisdiction pursuant to 42 U.S.C. § 1983.

(B) It is not an abuse of discretion for the Secretary of Health and Human Services to promulgate rules without complying with 5 U.S.C. § 553(b) where the time available between passage of legislation and its effective date is 49 days. *Republic Steel Corp. v. Costle*, 621 F.2d 797 (6th Cir. 1980).

■■■ (C) A hearing is not required where either state or federal law requires automatic grant adjustment for classes of recipients unless an individual asserts incorrect grant computation. *Benton v. Rhodes*, 586 F.2d 1 (6th Cir. 1978), *cert. denied*, 440 U.S. 973, 99 S.Ct. 1539, 59 L.Ed.2d 791 (1979).

(D) Notice to a recipient that he has the right to request a hearing if he believes that the change in law has been incorrectly applied in his individual case, comports with due process and applicable federal regulations.

(E) Under the circumstances set forth in Conclusions of Law (B) through (D), a request for an injunction should be and is hereby DENIED.

IT IS SO ORDERED.

---

4. The sentence might more appropriately have read "... you cannot *prevail* at a hearing unless you can show that the new law has been incorrectly applied to your individual ADC case."