**Linda GILMAN, on her own behalf and on behalf of her two minor children, and Cathleen English, on her own behalf and on behalf of her two minor children, and all other similarly situated persons, and Victoria Perez, on her own behalf and on behalf of her two minor children and on behalf of all other persons similarly situated**

v.

**Edgar HELMS, Jr., in his official capacity as Commissioner of New Hampshire Department of Health and Welfare, and Richard A. Chevrefils, in his official capacity as Director of the New Hampshire Division of Welfare.**

**Civ. No. 83–535–D.**

United States District Court,
D. New Hampshire.

April 18, 1985.

Ronald B. Eskin, N.H. Legal Assistance, Manchester, N.H., for plaintiffs.

Marc R. Scheer, Asst. Atty. Gen., Concord, N.H., for defendants.

## OPINION

DEVINE, Chief Judge.

This is a class action wherein plaintiffs, recipients of public assistance benefits, challenge the administration of the Aid to Families with Dependent Children ("AFDC"), food stamps, and Medicaid programs by defendants, officials of the New Hampshire Department of Health and Welfare. Plaintiffs, representing persons

whose food stamps or Medicaid benefits are terminated as a result of an alleged failure to comply with AFDC monthly reporting requirements, challenge New Hampshire's public assistance program as violative of controlling federal statutes as well as the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The parties have filed cross motions for partial summary judgment on the statutory issues alone: first, does the Federal Food Stamp Act, 7 U.S.C. §§ 2011, *et seq.* ("Food Stamp Act"), prohibit New Hampshire's policy of terminating food stamp benefits prior to a requested fair hearing where a recipient has allegedly failed to comply with AFDC/food stamp monthly reporting requirements?; and, second, does the federal Medicaid statute, 42 U.S.C. § 1396a, prohibit New Hampshire's policy of refusing to automatically redetermine the Medicaid eligibility of a recipient under the medically needy Medicaid program where that person is to be terminated from Medicaid benefits under the categorical assistance (AFDC) program for failure to comply with AFDC monthly reporting requirements?

■ Before proceeding on the merits, the Court considers an important jurisdictional issue. Plaintiffs have founded jurisdiction upon both 28 U.S.C. § 1331, the federal question jurisdiction statute, and § 1343(3), the Civil Rights Act (42 U.S.C. § 1983) jurisdiction statute. However, section 1343(3) grants federal court jurisdiction over an action to redress the deprivation, under color of state law, of rights secured by the United States Constitution or by a federal statute providing for equal rights. The jurisdictional grant of section 1343(3) does not encompass a claim that a state welfare action is invalid because it conflicts with federal statutory entitlement programs, such as the Social Security Act. *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 602–03, 99 S.Ct. 1905, 1908, 60 L.Ed.2d 508 (1979). As the parties address only the federal statute consistency issue, the Court need only proceed to a determination that jurisdiction is properly founded upon 28 U.S.C. § 1331, and does not address the issue of whether jurisdiction may also be premised properly upon 42 U.S.C. § 1343(3).[1]

For the reasons stated below, the Court finds that plaintiffs' motion for summary judgment must be granted because the State of New Hampshire's policies concerning payment of interim food stamp benefits pending a fair hearing and concerning redetermination of Medicaid eligibility prior to Medicaid benefits termination are inconsistent with federal statutory requirements. In ruling on the motion, the Court finds that there are no genuine issues of material fact requiring trial and that plaintiffs are entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P.

The State of New Hampshire participates in the food stamp,[2] AFDC,[3] and Medicaid[4] programs, which are federal-state cooperative public assistance programs. The food stamp program is designed to supplement low-income household food purchasing power in order to assure adequate levels of nutrition. 7 U.S.C. § 2011; *Dupler v. City of Portland*, 421 F.Supp. 1314, 1318 (D.Me. 1976). The AFDC program provides financial assistance to needy dependent children and the relatives who live with them. 42 U.S.C. § 601; *Heckler v. Turner*, —— U.S. ——, ——, 105 S.Ct. 1138, 1141–42, 84 L.Ed.2d 138 (U.S.1985); *Shea v. Vialpando*, 416 U.S. 251, 254, 94 S.Ct. 1746, 1750,

---

**1.** *Cf. Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) (section 1343[e] jurisdiction does exist over a "substantial constitutional claim", which in turn permits exercise of pendent jurisdiction over related federal statutory claims arising out of same facts); *Jackson v. Guissinger*, 589 F.Supp. 1288, 1293–95 (W.D. La.1984) (finding substantial constitutional claim sufficient to support pendent jurisdiction over federal statutory AFDC challenges).

**2.** The Federal Food Stamp Act, 7 U.S.C. §§ 2011, *et seq.*

**3.** Social Security Act of 1935, subch. IV, pt. A, as amended, 42 U.S.C. §§ 601, *et seq.*

**4.** Title XIX of the Social Security Act of 1935, as amended, 42 U.S.C. §§ 1396, *et seq.*

40 L.Ed.2d 120 (1974). The Medicaid program is designed to provide certain medical treatment costs to needy persons, including recipients of AFDC benefits. 42 U.S.C. § 1396; *Schweiker v. Hogan*, 457 U.S. 569, 571, 102 S.Ct. 2597, 2600, 73 L.Ed.2d 227 (1982). As a participating state, New Hampshire must comply with all requirements imposed by the Food Stamp and Social Security Acts and implementing regulations. 7 U.S.C. § 2014(b); 42 U.S.C. §§ 602 and 1396a. *Schweiker v. Gray Panthers*, 453 U.S. 34, 37, 101 S.Ct. 2633, 2636, 69 L.Ed.2d 460 (1981); *Shea v. Vialpando, supra*, 416 U.S. at 253, 94 S.Ct. at 1750; *Massachusetts Association of Older Americans v. Sharp*, 700 F.2d 749, 750 (1st Cir.1983); *Dupler v. City of Portland, supra*, 421 F.Supp. at 1318.

Federal law requires that state food stamp and AFDC program plans include monthly reporting requirements for most households receiving these benefits. *See* 7 U.S.C. § 2015(c)(1) and 42 U.S.C. § 602(a)(14). In 1982 Congress amended the Food Stamp Act, 7 U.S.C. § 2015(c), to permit the Secretary of Agriculture to waive the § 2015(c) food stamp monthly reporting requirements for state plans to permit states to create a combined reporting program for households receiving both food stamps and AFDC benefits. Omnibus Budget Reconciliation Act of 1982, section 156, P.L. No. 97–253, 96 Stat. 763 ("OBRA–1982"). 7 U.S.C. § 2015(c) provides:

> (5) The Secretary is authorized, upon the request of a State agency, to waive any provision of this subsection—to the extent necessary to permit the State agency to establish periodic reporting requirements for the purposes of this chapter which are similar to the periodic reporting requirements established under the State plan approved under part A of title IV of the Social Security Act (42 U.S.C. § 601, *et seq.*) in that State.

The legislative history accompanying OBRA–1982 indicates only that this waiver provision was designed to streamline redundant state assistance program reporting requirements.

*Reporting requirements*

Section 111 would amend section 6(c) of the Act to allow the Secretary to waive, upon request from the State agency, provisions of the Act concerning periodic reporting by households. Waivers would be granted as necessary to permit the State agency to establish periodic reporting requirements for purposes of the Act that are similar to the periodic reporting requirements established under the State plan under title IV–A of the Social Security Act for aid to families with dependent children. However, the Secretary would not be permitted to waive the provisions which exempt certain households from the requirement to submit periodic reports. These exempt households include migrant households and households with no earned income in which all members are elderly or disabled.

Sen.Rep. No. 504, 97th Cong., 2d Sess., U.S.Code Cong. & Admin.News 1982, pp. 1641, 1728. New Hampshire applied for and received a waiver from the Secretary of Agriculture permitting New Hampshire "to follow the AFDC procedure for response to the monthly report and termination of the case for non-reporting". In implementing this waiver, New Hampshire enacted the following five-step procedure for reporting by food stamp and AFDC benefit[5] recipients and for hearings on disputes arising thereunder:

1. On or about the 30th of each month, the Division of Welfare mails a monthly report form to the recipient, which report advises "If your report is received incomplete or late you may not receive next monthly benefits.... If you *do not report*, you will not receive assistance next month and your case will be *closed*." Public Assistance Manual ("PAM") § 3414.6; Exhibit B, Defendants' September 4, 1984,

---

**5.** Certain food stamp recipients are exempted from this monthly reporting requirement, but such exemptions are not relevant to this case.

Memorandum in Support of Defendants' Cross-Motion for Partial Summary Judgment (hereinafter "Defendants' Sept. 4 Memo").

2. If the recipient returns a completed form within ten days (approximately 10th of month), the recipient continues to receive uninterrupted benefits providing the form information indicates recipient remains eligible. PAM §§ 3414.7(a) and 3414.8(b).

3. If the reporting form is timely returned but is incomplete, the State returns the form to the recipient with a "Notice of Case Closing" advising him that unless a complete form is returned by the due date or the extended due date (approximately 20th of month), recipient's AFDC financial and medical assistance and food stamp benefits will be terminated as of the next month. The Notice further advises the recipient that he may request a fair hearing to contest the State's determination, but that such hearing request must be made within ten days, accompanied by a completed monthly report form in order that recipient's benefits may be continued pending hearing. (If recipient contests the State's determination concerning lack of good cause for late reporting, recipient need only submit a hearing request.) PAM § 3414.-8(c) and (f); § 4600.24–.25; Exhibit C, Defendants' Sept. 4 Memo.

4. If a completed form is not received by the State by the extended due date (20th of month), the recipient's benefits are terminated immediately (absent waiver for good cause). A notice of decision and appeal rights are sent to the recipient. The recipient may request a fair hearing after the extended due date (20th of month), but will not receive benefits pending the fair hearing. In special cases the State in its discretion may continue benefits for a recipient claiming good cause for late submission (sickness, emergency, mail delay) after the end of the month. PAM §§ 3414.8(f); 3414.13; 3414.14; 4600.24–.25.

5. A recipient whose benefits have been terminated for failure to submit a complete monthly report is automatically sent a re-. port form for the next reporting period, and if recipient timely files a complete report for that month his benefits are automatically redetermined without additional application. PAM § 3414.8(f).

It is the hearing and termination elements of this reporting procedure which give rise to the instant litigation. The first class of plaintiffs challenge the New Hampshire policy of refusing to pay interim food stamp benefits to those recipients who allegedly have failed to submit a complete monthly report, pending a requested fair hearing to contest the termination. The second class of plaintiffs challenge the New Hampshire policy of terminating Medicaid benefits to recipients who have failed to submit a monthly report without redetermining that recipient's eligibility for Medicaid benefits under the medically needy criteria of the Medicaid program.

*I. Food Stamp Benefits Pending Hearing.*

Plaintiffs contend that 7 U.S.C. § 2020(e)(10) of the Food Stamp Act requires the New Hampshire food stamp program to continue payment of food stamp benefits to any recipient pending a fair hearing request, whether or not that recipient has submitted a complete report by the extended filing date (20th day of the month). Defendants respond that 7 U.S.C. § 2015(c)(5) permits the Secretary to waive any portion of the Food Stamp Act reporting requirements, including the provisions of 7 U.S.C. § 2020(e)(10), and that the Secretary did waive the interim benefits requirement of § 2020(e)(10) when granting food stamp reporting waivers to New Hampshire. The Court finds that the Secretarial waiver granted to New Hampshire does not contain any waiver of the § 2020(e)(10) interim food stamp benefits provision, and that the Secretary is not authorized to grant such a waiver in any event.

Initially, the Court notes that termination of food stamp benefits by the New Hampshire Division of Welfare solely because of monthly reporting violations is an uncommon event. The Division reports that 93%

of monthly report cases are filed in complete form by the extended due date and another 4% of the cases are late filed and accepted for good cause by the end of the month. The remaining 3% of monthly report cases which are closed for nonreporting include recipients who never file at all, as well as those who file after being closed but who are not eligible for the payment month in any event. Thus, the instant problem affects less than 3% of the reporting population. Defendants' Sept. 4 Memo of Law, pp. 15–16. Common sense dictates that many, if not most, of cases involving mail delays, misdeliveries, or administrative error could be cured by the State's second notice and a resubmission of the report by the recipient before the extended deadline. However, in the rare case where there has been no resubmission (for whatever reason), but recipient claims to have filed a complete report, recipient is entitled to a fair hearing on the submission issue as well as interim benefits.

*A. Secretarial Waiver Document*

■ Defendants contend that the Secretary of Agriculture expressly waived the interim benefits requirement of 7 U.S.C. § 2020(e)(10) when the Secretary authorized New Hampshire to combine AFDC and food stamp monthly reporting procedures. However, the Court finds defendants' argument to be meritless, as the waiver document[6] merely authorized New Hampshire "to follow the AFDC procedure for response to the monthly report and termination of the case for non-reporting". Exhibit I, Defendants' Responses to Plaintiffs' Second Set of Interrogatories. The "waiver document" explained further:

It is our understanding that the procedure will work as follows:

The actual monthly report would contain the intent to close language. If the household does not respond, a second notice (reminder notice) would be issued approximately the tenth day of the pro-

cess month and tell the household that its case will be closed in ten days (the end of the extended filing period). If the monthly report is not received then the household will receive a termination notice.

This waiver request is not prohibited by the regulations and the procedure described above is approved.

The waiver document contains no reference to disputed cases wherein recipients claimed to have complied with reporting requirements and certainly contains no reference to an override of fair hearing and interim benefits rights under § 2020(e)(10).

*B. Statutory Construction*

■ The Food Stamp Act and implementing regulations require that a recipient receive benefits pending a requested hearing if the recipient is contesting the merits of the State's decision to terminate food stamp benefits for failure to submit a monthly report. Section 2020(e) provides in relevant part:

The State plan of operation ... shall provide, among such other things as may be required by regulation—

. . . .

(10) for the granting of a fair hearing and a prompt determination thereafter to any household aggrieved by the action of the State agency under any provision of its plan of operation as it affects the participation of such household in the food stamp program...: *Provided,* That any household which timely request such a fair hearing after receiving individual notice of agency action reducing or terminating its benefits within the household's certification period shall continue to participate and receive benefits on the basis authorized immediately prior to the notice of adverse action until such time as the fair hearing is completed and an adverse decision rendered or until such time as the household's certification period terminates, whichever occurs earlier,

---

**6.** Both parties refer to the November 29, 1982, letter from John Ghiorzi, Regional Director, Family Nutrition Programs, Northeast Region, U.S. Department of Agriculture, to defendant Richard Chevrefils as the "waiver document". *See* Defendants' Responses to Plaintiffs' Second Set of Interrogatories, Question 8 and Exhibit I.

except that in any case in which the State agency receives from the household a written statement containing information that clearly requires a reduction or termination of the household's benefits, the State agency may act immediately to reduce or terminate the household's benefits and may provide notice of its action to the household as late as the date on which the action becomes effective.

The plain language of section 2020(e)(10) requires that a recipient timely requesting a fair hearing shall receive benefits pending a hearing on the factual issue of whether the recipient complied with monthly reporting requirements. However, it is clear that no hearing is required where the recipient admits he did not submit a monthly report, thereby admitting ineligibility under § 2015(c)(4), but simply contests the proposed termination solely on the basis of questions of law or policy. *See* 7 U.S.C. § 2015(c)(4); 7 C.F.R. § 273.21(p)(2)(i); *Ohio State Consumer Education Association v. Schweiker*, 541 F.Supp. 915, 920–21 (S.D.Ohio 1982). *Cf. Goldberg v. Kelly*, 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970) (ruling pretermination hearing required where an *eligible* recipient may be deprived of benefits pending resolution of controversy over eligibility); *Foggs v. Block*, 722 F.2d 933, 937–39 (1st Cir.1983), *cert. granted sub nom. Atkins v. Parker*, —— U.S. ——, 104 S.Ct. 3532, 82 L.Ed.2d 838 (1984) (applying due process analysis to notice of *recalculation* of benefits following statutorily mandated reduction in food stamp benefits given substantial risk of calculation error).

The final regulations promulgated by the Secretary of Agriculture to implement the Monthly Reporting and Retrospective Budgeting ("MRRB") amendments to the Food Stamp Act clearly provide that state food stamp programs must afford fair hearings and interim food stamp benefits in those circumstances where the recipient claims to have submitted a complete and timely report. 7 C.F.R. §§ 273.12(f)(2) and (5); 273.15(a) and 273.21(p) (1984); 48 Fed.R. 54951 (Dec. 8, 1983). However, the Secretary's regulations also clearly provide

that no interim benefits should be paid to a recipient who admits that he failed to submit a complete and timely report. 7 C.F.R. § 273.21(p)(2)(i) (1984). Title 7 C.F.R. § 273.12(f)(2) provides in relevant part:

(ii) State agencies may, with prior FNS approval, combine the use of a joint PA [Public Assistance]/food stamp change reporting form with a PA reporting system that demands the regular submission of reports, such as a monthly reporting system. The State agency shall insure that the following requirements are met:

(A) Households shall not have their eligibility or allotment changed merely because they fail to submit one or more of the system's regular reports. If a household's PA benefits are terminated due to the household's failure to submit a report, the State agency shall follow the procedures in paragraph (f)(5) of this section.

Title 7 C.F.R. § 273.12(f)(5) provides:

(5) Whenever a change results in the termination of a household's PA benefits within its food stamp certification period, and the State agency does not have sufficient information to determine how the change affects the household's food stamp eligibility and benefit level ..., the State agency shall not terminate the household's food stamp benefits but shall instead take the following action:

(i) Where a PA notice of adverse action has been sent, the State agency shall wait until the household's notice of adverse action period expires or until the household requests a fair hearing, whichever occurs first. If the household requests a fair hearing and the PA benefits are continued pending the appeal, the household's food stamp benefits shall be continued at the same basis.

(ii) If a PA notice of adverse action is not required, or the household decides not to request a fair hearing and continuation of its PA benefits, the State agency shall send the household a notice of expiration which informs the household that its certification period will expire at the end of the month following the month

the notice of expiration is sent and that it must reapply if it wishes to continue to participate. . . .

Title 7 C.F.R. § 273.21(p) provides:

(p) *Fair hearings—(1) Entitlement.* All households participating in a MRRB system shall be entitled to fair hearings in accordance with § 273.15.

(2) *Continuation of benefits.* (i) Any household which requests a fair hearing and does not waive continuation of benefits, and is otherwise eligible for continuation of benefits, shall have its benefits continued until the end of the certification period or the resolution of the fair hearing, whichever is first. However, if the State agency did not receive a monthly report from the household by the extended filing date and the household admits that it did not submit such a monthly report, the household shall not have its benefits continued.

(ii) The State agency shall provide continued benefits no later than five working days from the day it receives the household's request.

(iii) A household whose benefits have been continued shall file monthly reports until the end of the certification period. If the fair hearing is with regard to termination for nonreceipt of the monthly report by the State agency, then a new, complete monthly report for the month in question shall be submitted by the household before benefits are continued.

Thus, these provisions in effect offer a limited grace period beyond the 20th day of the month—section 273.21(p)(2)(i–ii) requires payment of continued benefits pending a fair hearing on recipient's claims concerning submission of a monthly report, such benefits payable within five working days of the hearing request, however, sec-

tion 273.21(p)(2)(iii) requires that a recipient must submit a complete report for the disputed month before benefits may be continued in successive reporting months. The Court finds that the Secretary's interpretation of the MRRB amendments to the Food Stamp Act, as set forth in the implementing regulations, 7 C.F.R. §§ 273.12(f)(2) and (5); 273.15(a) and 273.21(p) (1984), is consistent with the plain meaning of the Act and is therefore entitled to considerable deference by this Court. *Bureau of Alcohol, Tobacco, and Firearms v. Federal Labor Relations Authority,* 464 U.S. 89, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983); *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981).

The Court notes that the Secretary had initially taken a contrary view of the interim benefits issue. Although the interim regulations, 49 Fed.Reg. 22684 (May 25, 1982), implementing the MRRB provisions of the Food Stamp Act did not address the question of fair hearings and continued benefits in monthly reporting violation cases, the Secretary subsequently published Policy Memorandum No. 82–18, June 18, 1982 (Plaintiffs' Memo, Appendix C). The memorandum instructed state agencies that a household which failed to submit a monthly report is not entitled to monthly benefits and that where a household claimed to have submitted the monthly report, the state agency should consider issuing continued benefits on a case-by-case basis.[7] *See* 48 Fed.Reg. 54968. However, upon publication of final regulations to implement MRRB, the Secretary expressly rescinded the Policy Memorandum and added 7 C.F.R. § 273.21(p)(2)(i) requiring payment of interim benefits pending hearing where the household claims to have submitted a complete report. The Secretary

---

**7.** Policy Memorandum 82–18 relied upon 7 U.S.C. § 2015(c)(4) as amended by section 108(b)(3) of the Omnibus Budget Reconciliation Act of 1981, P.L. 97–35, 95 Stat. 361 (August 13, 1981) ("OBRA–1981"), in suggesting a case-by-case approach to payment of interim benefits. Section 2015(c)(4) provides that any household that fails to submit periodic reports shall not

receive an allotment until the report is submitted. The memo reasons that OBRA–1981 amendments to § 2015(c)(4) post date and therefore impliedly repeal § 2020(e)(10). However, the Secretary's final regulations expressly rescind this § 2015(c)(4) "implied repeal" policy memo, and defendants have not raised this particular implied repeal argument in any event.

explained the change in administrative policy:

One commenter pointed out that under this policy [Policy Memorandum 82–18], a State agency might deny continued benefits to a household which in fact submitted a monthly report, but the report was lost in the mail or in the local office. While such losses would be unusual, they represent a real possibility. The Department agrees with the commenter who suggested that it would be inequitable to deny continued benefits in such cases. In addition, such a denial would conflict with Section 6(c)(2)(D) of the Food Stamp Act, which provides that the household shall ' * * * be afforded prompt notice of failure to file any report timely or completely * * * and to exercise its rights under section 11(e)(10) of this Act.' Section 11(e)(10) establishes the household's right to both fair hearing and the continuation of benefits.

For these reasons, Policy Memorandum No. 82–18 has been rescinded. Households which make a timely request for a fair hearing and claim to have submitted the monthly report by the final due date shall receive continued benefits until the fair hearing is completed and an adverse decision rendered or until the household's certification period expires, whichever comes first. Such continued benefits will only be provided if the household submits a new complete monthly report for the month in question and for the subsequent months of the certification period. During such continuation of benefits, the household is required to continue submitting monthly

reports. However, if the household admits that it failed to submit the monthly reporting by the final due date or the household has been determined ineligible on other information, and the household does not dispute that determination, continued benefits shall not be provided. The Department emphasizes that if benefits have been continued and the termination for failure to report is upheld by the fair hearing decision, a claim against the household must be established for the overissued benefits. (See 7 CFR 273.-21(p)(2)(i).

48 Fed.Reg. 54963 (Dec. 8, 1983). Thus, it is clear that New Hampshire's policy is inconsistent with the Secretary's final regulations.[8]

■ Defendants do not directly challenge the Secretary's regulatory interpretation of 7 U.S.C. §§ 2015 and 2020, but instead adopt an approach combining creative and selective reading of the applicable statute and regulations to argue that these provisions permit immediate termination of food stamp benefits where the agency contends that recipients failed to file a report. Defendants argue that § 2015(c)(5) authorizes Secretarial waiver of the § 2020(e)(10) interim benefits requirements. Defendants emphasize the following portion of § 2015(c)(2):

(2) Any Household required to file a periodic report ... shall, (A) if it is eligible to participate and has filed a timely and complete report, receive its allotment, ... (C) have a reasonable period of time after the close of the month in which to file their reports on forms approved by the Secretary, and (D) be af-

---

**8.** Although neither party addresses the issue, the Court notes that there is some legislative history underlying OBRA–1981 to suggest that fair hearings and interim benefits should not be afforded even where a recipient claims that a report was actually submitted, reasoning that such a hearing is pointless since the household can simply resubmit its lost or delayed monthly report. *See* Report of Committee on Agriculture, Nutrition and Forestry, *reprinted in* 1981 U.S.Code Cong. & Ad.News 450–51. However, the Court finds that this one item in a committee report, now narrowly construed by the administrative agency to apply only in cases where the house-

hold concedes the report has not been submitted, does not rise to the level of "a clearly expressed legislative intent to the contrary" sufficient to overturn the plain meaning of the statute. *See General Motors Corp. v. Ruckelshaus,* 742 F.2d 1561, 1570–71 (D.C.Cir.1984); *Monteray Coal Company v. Federal Mine Safety and Health Review Commission,* 743 F.2d 589, 595 (7th Cir.1984); *see generally In re Smith and Wesson,* 757 F.2d 431, 433–434 (1st Cir.1985) (rejecting plain meaning of statute only where both House and Senate legislative history clearly expressed opposite intent).

forded prompt notice of failure to file any report timely or completely, and given a reasonable opportunity to cure that failure (with any applicable time requirements extended accordingly) *and to exercise its rights under section 2020(e)(10) of this title.*

(Emphasis added.) Defendants contend that since § 2020(e)(10) is referenced with § 2015(c)(2), then it must follow that § 2015(c)(5), which authorizes Secretarial waiver of § 2015(c)(1)–(4), necessarily authorizes waiver of § 2020(e)(10) interim benefits as well.

The Court refuses to expand the plain meaning of §§ 2015(c)(5) to "read in" an implied waiver of § 2020(e)(10). The plain meaning of § 2015(c)(5) is that the Secretary may waive the reporting requirements of § 2015(c)(1)–(4). Nowhere in § 2015(c)(5) is there an indication that the Secretary has authority to create exceptions to the "rights" of fair hearing and interim benefits afforded to food stamp recipients by § 2020(e)(10). *See generally Russello v. United States,* 464 U.S. 16, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983) (if statutory language is unambiguous, that language must ordinarily be regarded as conclusive, barring some clearly expressed legislative intent to the contrary). Section 2015(c)(2) does not include fair hearings and interim benefits as a reporting requirement, but rather refers to the § 2020(e)(10) rights only in order to establish that the state reporting schedule must allow a reasonable time period for a recipient to exercise his fair hearing "rights". There being nothing in the plain language of § 2015(c)(5) indicating an override of § 2020(e)(10), this Court will not distort the statutory language in order to adopt the tortured statutory construction advocated by defendants.

A construction of the Food Stamp Act which avoids creating an exception to the fair hearing and interim benefits requirements of § 2020(e)(10) is consistent with both the Act's purpose—to assure adequate nutrition to low-income households—and with prior rulings of the First Circuit Court

of Appeals on related Food Stamp Act issues. Defendants attempt to minimize the harsh effects of their construction by arguing New Hampshire merely "suspends" a recipient's benefits for one month as sanction for late and incomplete reporting, emphasizing that the recipient may automatically requalify for food stamps by submitting a report in the next monthly reporting cycle. However, defendants' argument is a distinction without a difference to a needy household claiming to have complied with reporting requirements, but denied the food stamp assistance it requires to maintain adequate levels of nutrition. *See Goldberg v. Kelly, supra,* 397 U.S. at 264, 90 S.Ct. at 1018; *Philadelphia Welfare Rights Organization v. O'Bannon,* 525 F.Supp. 1055, 1058–59 (E.D.Pa.1981). In at least implicit recognition of the essential nature of food stamp benefits, the First Circuit Court of Appeals has ruled that 7 U.S.C. § 2020(e)(10) requires meaningful advance notice to recipients prior to benefits termination or reduction in even a "mass change" context (a statutorily mandated reduction in benefits) so as to assure an opportunity for recipients to challenge government error. *Foggs v. Block, supra,* 722 F.2d at 938–40. Consistent reasoning would require the conclusion that § 2020(e)(10) would require a similar opportunity for recipients in the individual, as opposed to the mass, change context.

## II. Medicaid Claims

The second class of plaintiffs contends that the federal Medicaid statute, 42 U.S.C. § 1396a, prohibits New Hampshire's policy of refusing to redetermine the Medicaid eligibility of a recipient under the medically needy Medicaid program prior to termination under the AFDC categorical assistance program for failure to comply with AFDC reporting requirements. The Court finds that this issue previously has been resolved in plaintiffs' favor by the First Circuit Court of Appeals in *Massachusetts Association of Older Americans v. Sharp,* 700 F.2d 749 (1st Cir.1983) ("*Sharp* "), and therefore plaintiffs' motion for summary judgment must be granted on this issue as well.

The federal Medicaid program originated in 1965 as Title XIX of the Social Security Act ("SSA") establishing a cooperative federal/state partnership to provide "federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons". Act of July 30, 1965, Pub.L. No. 89–97, Title I, § 121(a), 79 Stat. 373; *Schweiker v. Hogan, supra,* 457 U.S. at 571, 102 S.Ct. at 2600. Although states are not required to participate, once a participant a state must comply with all requirements imposed by the SSA and regulations. 42 U.S.C. § 1396; *Sharp, supra,* 700 F.2d at 750. New Hampshire participates in the Medicaid program (RSA 167:1–6), having developed a medical assistance program which conforms with the requirements of 42 U.S.C. § 1396a. 42 U.S.C. § 1396a(b).

As a participating state, New Hampshire must provide assistance to the "categorically needy", and may choose to provide assistance to the "medically needy". 42 U.S.C. § 1396a(a)(10); 42 C.F.R. §§ 435.-100–435.340 (1981). Categorically needy individuals are those receiving federal cash assistance through other programs such as AFDC or Supplemental Security Income for the Aged, Blind and Disabled ("SSI"). 42 U.S.C. § 1396a(a)(10); *Schweiker v. Gray Panthers, supra,* 453 U.S. at 37–39, 101 S.Ct. at 2636–38. Medically needy individuals are those lacking the ability to pay for medical expenses, but with incomes too large to qualify for categorical assistance. *Schweiker v. Hogan, supra,* 457 U.S. at 572–73, 102 S.Ct. at 2601; *Schweiker v. Gray Panthers, supra,* 453 U.S. at 37, 101 S.Ct. at 2636; *Sharp, supra,* 700 F.2d at 750.

In *Sharp,* the First Circuit Court ruled that a State must redetermine a recipient's Medicaid eligibility under the medically needy program prior to terminating that recipient from the categorical assistance Medicaid program concurrent with a termination of AFDC benefits. Defendants urge this Court to read *Sharp* narrowly, as applying only to cases where an AFDC recipient is being terminated for reasons which are specifically excluded as a Medic-aid eligibility criterion. Defendants argue that *Sharp,* narrowly construed, does not apply to the instant case where AFDC Medicaid recipients are terminated for failure to comply with monthly reporting, an item which is not specifically excluded as a Medicaid eligibility criterion.

However, there is nothing in the *Sharp* decision to support such a narrow construction. The court ruled that the Medicaid statute, 42 U.S.C. § 1396a(a)(10)(B)(ii), and implementing regulations, 42 C.F.R. §§ 435.916(c)(1) and 435.930 (1981, 1984) required a redetermination of Medicaid eligibility prior to termination, and there is nothing in these provisions pertaining to defendants' attempted eligibility distinction. Chapter 42 U.S.C. § 1396a(a)(10)(B)(ii) provides that assistance to the mandatorily covered categorical assistance recipients cannot be less in "amount, duration, or scope" than assistance provided to other needy persons. The *Sharp* court ruled that this provision reflected congressional preference for the categorically needy and therefore any procedural protections ensuring continuity of benefits should be accorded to the categorically needy. Similarly, the court found that 42 C.F.R. § 435.916, requiring that the responsible state agency redetermine Medicaid eligibility promptly when it receives information about a change in recipient's circumstances affecting his eligibility, and 42 C.F.R. § 435.930, requiring that the responsible state agency continue to furnish Medicaid to all eligible individuals until they are found ineligible, required redetermination of benefits under the medically needy program prior to termination of categorical assistance Medicaid benefits. These statutory and regulatory provisions apply to the facts of the instant case as well. There being no distinction in the controlling statutory and regulatory language, the reasoning of the *Sharp* decision is directly applicable in the instant case. *See Jackson v. Guissinger,* 589 F.Supp. 1288, 1301 (W.D.La.1984); *Stenson v. Blum,* 476 F.Supp. 1331 (S.D.N.Y.1979), *aff'd without opinion,* 628 F.2d 1345 (2d

Cir.), *cert. denied,* 449 U.S. 885, 101 S.Ct. 239, 66 L.Ed.2d 111 (1980). Therefore, the Court finds that New Hampshire's refusal to redetermine eligibility under the medically needy program prior to termination of a recipient's Medicaid benefits under the categorical assistance (AFDC) program is inconsistent with applicable federal law.

For the foregoing reasons, plaintiffs' motion for summary judgment is granted on both the food stamp and the Medicaid claims.

SO ORDERED.